# UNITED STATES DISTRICT COURT

for the

## Middle District of Florida

| | |
|---|---|
| DE'MARIO JIVES<br>*Plaintiff,*<br><br>**-v-**<br><br>BISHOP WAYNE R. FELTON, THE HOLY CHRISTIAN CHURCH INTERNATIONAL, DARRYL MOORE, JOHN TYRONE JOHNSON and JOHN DOES 1–5,<br>*Defendants.* | )<br>)<br>)  Case No._____<br>)<br>)<br>)<br>)<br>)  **COMPLAINT AND JURY DEMAND**<br>)<br>)<br>)<br>)<br>)<br>) |

## CIVIL ACTION

*This civil action alleges, inter alia, a sustained pattern of retaliation, misuse of judicial process, interference with protected speech, and unlawful attempts to invade financial privacy, in violation of the First Amendment, 42 U.S.C. §§ 1983 and 1985(3), 11 U.S.C. § 362(k), and related Florida law.*

Plaintiff DE'MARIO JIVES, by and through his attorneys, LLG National Law Group, and by way of Complaint, brings this action for damages and other equitable relief against Defendants, BISHOP WAYNE R. FELTON, THE HOLY CHRISTIAN CHURCH INTERNATIONAL, DARRYL MOORE, JOHN TYRONE JOHNSON, and JOHN DOES 1–5, in their official and individual capacities, alleging as follows:

## INTRODUCTION

1. Plaintiff De'Mario Jives brings this action to redress a sustained pattern of harassment, litigation abuse, and unlawful interference directed at him by Bishop Wayne R. Felton, The Holy Christian Church International, and associated actors. For more than two years,

1

Defendants have engaged in a coordinated campaign to silence Jives' lawful journalistic activity, suppress his constitutionally protected speech, and damage his livelihood as a Florida-based commentator, reporter, and entrepreneur.

2. After initiating a defamation action in Minnesota federal court, Defendants used the resulting settlement agreement as a vehicle for continued retaliation, repeatedly filing enforcement motions, sanctions requests, and content-deletion demands long after the case had closed. Defendants escalated their conduct by attempting to subpoena Jives' Florida bank accounts, Apple account, and financial records, and by filing meritless submissions in Jives' Chapter 7 bankruptcy case. These actions were not undertaken to vindicate any legitimate legal right, but rather to intimidate, punish, and silence a journalist who reported on matters of public concern. The Defendants' actions were also intended to disrupt, interfere with, do reputational harm to, and reduce the earning power of the Plaintiff's business, DeMajio Media LLC.

3. Defendants' conduct constitutes abuse of process, tortious interference, intentional infliction of emotional distress, cyberstalking, defamation, and civil conspiracy under Florida law. Their coordinated efforts to suppress protected speech further support federal claims under 42 U.S.C. §1985(3) for civil-rights conspiracy, 42 U.S.C. §1983 for misuse of judicial machinery, and 11 U.S.C. §362(k) for violations of the bankruptcy automatic stay.

4. Plaintiff seeks damages, injunctive relief, and all remedies available under federal and Florida law to halt Defendants' ongoing misconduct and to protect his rights as a journalist, Florida resident, and bankruptcy debtor.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 11 U.S.C. § 362(k) to redress Defendants' misuse of judicial process, coordinated civil-rights

conspiracy, and interference with Plaintiff's bankruptcy protections, as well as related state-law claims arising under Florida law.

6.   This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as the action arises under the Constitution and laws of the United States.

7.   This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

8.   This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is a citizen of Florida. Defendant Bishop Wayne R. Felton is a citizen of Minnesota, and Defendant the Holy Christian Church International is headquartered and incorporated in Minnesota. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and injuries giving rise to Plaintiff's claims occurred in this District, including Defendants' repeated electronic communications, harassment, and attempts to obtain Plaintiff's Florida financial records. Venue is also proper under § 1391(b)(1) because Defendants are subject to personal jurisdiction in this District.

## PARTIES

10.   At all times relevant hereto, Plaintiff DE'MARIO JIVES is, upon information and belief, an adult resident citizen of the State of Florida, residing in Tampa, Hillsborough County, Florida.

11.   At all times relevant hereto, Defendant BISHOP WAYNE R. FELTON is, upon information and belief, an adult resident citizen of the State of Minnesota, residing in St. Paul, Ramsey County, Minnesota. Defendant Felton has publicly identified his mailing address in

federal filings as 125 Stevens Street West, St. Paul, Minnesota 55107. Defendant is sued in his individual capacity.

12.    At all times relevant hereto, Defendant THE HOLY CHRISTIAN CHURCH INTERNATIONAL is, upon information and belief, a religious organization headquartered and operating in the State of Minnesota, with a principal address believed to be 125 Stevens Street West, St. Paul, Minnesota 55107. The Church is sued for its direct involvement in, authorization of, and ratification of the acts described herein, and under all applicable theories of vicarious, agency, and organizational liability.

13.    At all times relevant hereto, Defendant DARRYL MOORE is, upon information and belief, an adult resident citizen of the State of Ohio, residing at either 1977 E. 224th Street, Euclid, Ohio 44117, or 24451 Lakeshore Boulevard, #1715, Euclid, Ohio 44123. Defendant Moore participated in, assisted with, or contributed to the retaliatory acts, enforcement submissions, monitoring activities, and coordinated conduct described herein. Defendant is sued in his individual capacity.

14.    At all times relevant hereto, Defendant JOHN TYRONE JOHNSON (also known as Tyesse Jackson) is, upon information and belief, an adult resident citizen of the State of Georgia, residing at 185 Montag Circle, Unit 101, Atlanta, Georgia 30307. Defendant Johnson participated in, assisted with, or contributed to the retaliatory acts, enforcement submissions, monitoring activities, and coordinated conduct described herein. Defendant is sued in his individual capacity.

15.    At all times relevant hereto, Defendants JOHN DOES 1–5 are individuals or entities whose identities are presently unknown to Plaintiff and who, upon information and belief, participated in, assisted with, or conspired in the acts and omissions described herein. Plaintiff will seek leave of Court to amend this Complaint to identify these Defendants once their identities become known.

4

16.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

17.    Plaintiff De'Mario Jives is a Florida-based journalist and online commentator who reports on matters of public concern, including religious leadership, nonprofit governance, and public controversies involving faith-based organizations. His work is constitutionally protected under the First Amendment and forms the core of his livelihood and business relationships.

18.    In 2023, Defendants Bishop Wayne R. Felton and The Holy Christian Church International initiated a defamation lawsuit against Plaintiff in the United States District Court for the District of Minnesota, Case No. 0:23-cv-467. Plaintiff's reporting concerned matters of public interest, and Defendants sought to silence his speech through litigation.

19.    In 2024, the parties entered into a Settlement Agreement, which Defendants later weaponized as a tool of retaliation. The Agreement required Plaintiff to remove certain content, but Defendants repeatedly expanded its scope, asserting that any commentary, reporting, or discussion even obliquely related to them, regardless of context, constituted a violation.

20.    After settlement, Defendants began filing serial enforcement motions, sanctions requests, and content-deletion demands long after the case had closed. These filings were not made to enforce legitimate obligations but to intimidate Plaintiff, exhaust his resources, and suppress his reporting by creating a prior restraint via a chilling effect by forcing him to self-censor. Defendants' filings included accusations that Plaintiff continued to "defame" them, even

5

when the content at issue did not mention Defendants at all.

21.    Between January 2025 and June 2026, Defendants filed at least six enforcement motions and sanctions requests, each asserting violations unrelated to any content mentioning Defendants.

22.    Defendants demanded deletion of videos and commentary that did not mention them, expanding the settlement agreement far beyond its terms.

23.    On June 10, 2026, the Minnesota court issued Dkt. 232, expressly holding that it "lacks jurisdiction to—and will not—entertain claims related to content posted after December 11, 2024." This order formally limited the court's authority and should have ended all enforcement activity regarding new content.

24.    Despite this clear jurisdictional limitation, Defendants filed Dkt. 233, a "Motion for Clarification," in which Defendant Felton attempted to preserve ongoing enforcement authority and urged the court to continue policing Plaintiff's speech. In Dkt. 233, Felton asserted that Plaintiff continued to violate the settlement agreement and requested further judicial intervention, even though the court had already disclaimed jurisdiction over such matters. Dkt. 233 demonstrates Defendants' continued misuse of judicial process to monitor, control, and suppress Plaintiff's speech.

25.    Defendants continued filing enforcement motions despite acknowledging in communications that the Minnesota court had disclaimed jurisdiction over new content.

26.    Defendants repeatedly sought to invoke state and federal judicial authority to compel Plaintiff's silence, including requests for sanctions, contempt-like penalties, and judicial monitoring of Plaintiff's speech, thereby engaging in joint action with state actors.

27.    Defendants' filings repeatedly demanded permanent gag orders, forced apologies, content deletion, restrictions on future speech, and even confession-of-judgment provisions.

These demands constitute unlawful prior restraint, retaliation, and abuse of judicial process, designed to silence a journalist rather than vindicate any legitimate legal right.

28.    In a further effort to wield the settlement agreement as a vindictive sword against Mr. Jives and his company, DeMajio Media LLC, the Defendants recently filed a new case in the U.S. District Court of Minnesota on June 18, 2026, seeking to enforce the settlement agreement (Case Number 0:26-cv-03013).

29.    Defendants escalated their conduct by attempting to subpoena Plaintiff's Florida bank accounts, Apple account, and other personal financial records. These efforts were undertaken without legal basis and in violation of Plaintiff's rights under the bankruptcy automatic stay, as Plaintiff was then a debtor in a Chapter 7 proceeding in the Middle District Court of Florida (MDFL Case No. 8:26-bk-04383-CED).

30.    Defendants also submitted filings in Plaintiff's bankruptcy case asserting false debts and attempting to interfere with the administration of the estate. These actions constitute willful violations of 11 U.S.C. § 362(k) and were undertaken to intimidate Plaintiff and disrupt his financial recovery.

31.    Defendants' conduct included repeated electronic communications, public statements, and litigation filings directed at Plaintiff in Florida, causing emotional distress, reputational harm, and interference with Plaintiff's business relationships. Defendants' actions constitute cyberstalking, harassment, and tortious interference under Florida law.

32.    Defendants' statements and enforcement submissions were disseminated to third parties, including church members, associates, and individuals involved in preparing enforcement materials, causing reputational harm and business disruption.

33.    Upon information and belief, Defendants acted in concert with John Does 1–5, including church members, associates, or agents who assisted in identifying Plaintiff's content,

7

preparing enforcement submissions, and disseminating statements intended to harm Plaintiff's reputation and silence his reporting. This coordinated conduct constitutes a civil conspiracy under federal and Florida law.

34. Defendants coordinated with church members and associates to identify Plaintiff's content, prepare enforcement submissions, and disseminate retaliatory statements.

35. Upon information and belief, Defendants and their associates monitored Plaintiff's online platforms on a near-daily basis to identify content for retaliatory filings.

36. Defendants' actions were undertaken intentionally, maliciously, and without lawful justification. Their conduct reflects a sustained pattern of retaliation against a journalist for engaging in protected speech, and has caused Plaintiff significant financial, emotional, and professional harm.

37. Defendants' repeated accusations and enforcement filings caused instability in Plaintiff's online platforms, including reduced audience engagement and temporary demonetization. This conduct interfered with and damaged the Plaintiff's business, DeMajio Media LLC.

38. Defendants repeatedly threatened additional sanctions and enforcement actions if Plaintiff continued reporting on matters of public concern.

39. Defendants' conduct occurred repeatedly over an extended period and involved coordinated actions, including multiple filings, electronic communications, monitoring of Plaintiff's online activity, and attempts to invoke judicial authority.

40. Defendants' actions were directed at Plaintiff and caused financial loss, reputational damage, emotional distress, disruption of bankruptcy administration, and interference with business relationships.

## CAUSES OF ACTION

### COUNT I
### CIVIL RIGHTS CONSPIRACY (42 U.S.C. § 1985(3))
*(As to All Defendants)*

41.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

42.     Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 entered into an agreement, combination, or understanding to suppress, punish, and retaliate against Plaintiff for engaging in protected First Amendment activity as a journalist reporting on matters of public concern. Defendants acted jointly and in concert, coordinating their actions through communications, shared enforcement submissions, and collective monitoring of Plaintiff's content.

43.     In furtherance of this conspiracy, Defendants committed multiple overt acts, including but not limited to:

a.   filing serial enforcement motions and sanctions requests in the Minnesota federal action after the case had closed;

b.   submitting Dkt. 233, a "Motion for Clarification," seeking continued judicial policing of Plaintiff's speech despite the court's jurisdictional limitation in Dkt. 232;

c.   demanding deletion of content that did not mention Defendants;

d.   attempting to obtain Plaintiff's Florida bank records, Apple account information, and other financial data without lawful basis;

e.   submitting false or misleading filings in Plaintiff's Florida bankruptcy case;

f.   coordinating with unknown individuals (John Does 1–5) to monitor Plaintiff's

9

online activity and identify content for retaliatory enforcement.

44.     Defendants' conspiracy was motivated by class-based, discriminatory animus toward Plaintiff's membership in a class of individuals engaged in protected expressive activity, namely journalists and commentators reporting on religious organizations and matters of public concern. Defendants sought to deprive Plaintiff of equal protection of the laws and equal enjoyment of constitutional rights, including the right to free speech and the right to be free from retaliatory misuse of judicial process.

45.     Defendants targeted Plaintiff specifically because of his role as a journalist reporting on matters of public concern, a protected class of individuals engaged in expressive activity under the First Amendment.

46.     The conspiracy involved multiple distinct actors, including individuals outside the Church's organizational structure, and was undertaken for unlawful purposes, placing it outside the scope of the intracorporate conspiracy doctrine.

47.     Defendants' coordinated actions were undertaken intentionally and maliciously, with the unlawful objective of silencing Plaintiff, damaging his livelihood, and deterring him from engaging in protected speech. Defendants' conduct directly caused Plaintiff financial loss, reputational harm, emotional distress, interference with business relationships, and disruption of bankruptcy administration.

48.     As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered damages and is entitled to all relief authorized under 42 U.S.C. § 1985(3), including compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT II
### MISUSE OF JUDICIAL PROCESS UNDER COLOR OF LAW (42 U.S.C. § 1983)
#### *(As to All Defendants)*

49.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far

above and incorporates the same as if fully set forth at length herein.

50.    Defendants repeatedly invoked and misused state and federal judicial machinery, including enforcement motions, sanctions requests, subpoena attempts, and filings in Plaintiff's bankruptcy case, to suppress Plaintiff's protected speech and interfere with his constitutional rights. Such misuse of judicial process is not protected petitioning activity and falls outside the scope of any legitimate litigation conduct.

51.    Defendants acted under color of law within the meaning of 42 U.S.C. § 1983 because they:

    a.  intentionally invoked state and federal court authority to compel Plaintiff's silence;

    b.  sought judicial orders functioning as unconstitutional prior restraints on Plaintiff's speech;

    c.  attempted to use state-issued subpoenas to obtain Plaintiff's Florida financial records without lawful basis;

    d.  attempted to use federal bankruptcy procedures to assert false debts and interfere with estate administration;

    e.  requested judicial enforcement of sanctions, contempt-like penalties, and speech-policing mechanisms; and

    f.  engaged in joint action with judicial officers by repeatedly requesting state power to be exercised against Plaintiff in ways that violated clearly established constitutional rights.

52.    Defendants' repeated requests for judicial intervention constitute joint participation with state actors, satisfying the joint-action requirement for liability under 42 U.S.C. § 1983.

53.    Defendants' misuse of judicial process deprived Plaintiff of rights secured by the

First Amendment, including the right to engage in protected expressive activity without retaliation, and the Fourteenth Amendment, including the right to be free from arbitrary and abusive exercises of state power.

54.     Defendants' conduct caused Plaintiff significant harm, including financial loss, reputational damage, emotional distress, interference with business relationships, and disruption of bankruptcy administration.

55.     Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and costs pursuant to 42 U.S.C. § 1988.

**COUNT III**
**WILLFUL VIOLATION OF THE BANKRUPTCY AUTOMATIC STAY**
**(11 U.S.C. § 362(K))**
***(As to All Defendants)***

56.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

57.     At all times relevant hereto, Plaintiff was a debtor in a Chapter 7 bankruptcy proceeding pending in the United States Bankruptcy Court for the Middle District of Florida (MDFL Case No. 8:26-bk-04383-CED), and the automatic stay under 11 U.S.C. § 362(a) was in full force and effect.

58.     Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 had actual knowledge of Plaintiff's bankruptcy case. Plaintiff publicly disclosed his bankruptcy status, referenced it in communications, and Defendants themselves filed materials in the bankruptcy case asserting purported debts and attempting to influence the administration of the estate.

59.     Upon information and belief, Defendants received notice of Plaintiff's bankruptcy case through their own filings in the bankruptcy court and through Plaintiff's direct

communications, confirming their actual knowledge of the automatic stay.

60.    Acting individually and in concert, Defendants engaged in multiple overt acts that violated the automatic stay, including but not limited to:

    a.  attempting to subpoena Plaintiff's Florida bank accounts, Apple account, and other personal financial records;

    b.  submitting filings in Plaintiff's bankruptcy case asserting false debts and attempting to interfere with estate administration;

    c.  attempting to collect, enforce, or recover alleged obligations arising from the Minnesota settlement agreement;

    d.  continuing post-judgment enforcement activity in Minnesota federal court designed to pressure Plaintiff financially during the pendency of his bankruptcy;

    e.  coordinating with unknown individuals (John Does 1–5) to identify Plaintiff's assets and financial accounts for improper collection activity.

61.    These acts violated 11 U.S.C. § 362(a)(1), (a)(3), and (a)(6), each of which prohibits continued litigation activity, acts to obtain or control property of the estate, and attempts to collect or recover pre-petition claims.

62.    Defendants' actions were willful within the meaning of 11 U.S.C. § 362(k) because:

    a.  Defendants knew of the bankruptcy;

    b.  Defendants intended the acts that violated the stay; and

    c.  Defendants undertook those acts for the purpose of coercing, punishing, or financially harming Plaintiff while he was under the protection of the bankruptcy court.

63.    Defendants' stay-violating conduct caused Plaintiff significant harm, including

financial loss, emotional distress, disruption of bankruptcy administration, interference with the trustee's duties, and increased litigation costs.

64.     Pursuant to 11 U.S.C. § 362(k), Plaintiff is entitled to actual damages, punitive damages, attorney's fees, and costs for Defendants' willful violations of the automatic stay.

**COUNT IV**
**ABUSE OF PROCESS (FLORIDA LAW)**
*(As to All Defendants)*

65.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

66.     Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 repeatedly used judicial process, including enforcement motions, sanctions requests, subpoena attempts, and the filing of Dkt. 233, for purposes other than those for which such process was designed. Rather than seeking legitimate adjudication of rights, Defendants used judicial procedures to intimidate Plaintiff, suppress his reporting, and coerce him into silence.

67.     The judicial processes at issue were properly issued but were subsequently used for purposes wholly unrelated to their legitimate function, satisfying the misuse-after-issuance requirement under Florida law.

68.     Defendants committed multiple overt acts constituting abuse of process, including but not limited to:

    a.  filing serial enforcement motions in the Minnesota federal case after the court expressly disclaimed jurisdiction in Dkt. 232;

    b.  submitting Dkt. 233 for the improper purpose of compelling ongoing judicial monitoring of Plaintiff's speech;

    c.  demanding deletion of content that did not mention Defendants;

14

d.   attempting to use subpoenas to obtain Plaintiff's Florida bank records and Apple account information without any lawful basis;

e.   submitting false or misleading filings in Plaintiff's bankruptcy case to interfere with estate administration;

f.   seeking gag orders, forced apologies, and confession-of-judgment provisions designed to punish Plaintiff rather than resolve any legitimate dispute.

69.   These acts constitute a perversion of judicial process, undertaken not to secure judicial relief, but to retaliate against Plaintiff for engaging in protected First Amendment activity, to damage his livelihood, and to deter him from reporting on matters of public concern.

70.   As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered financial loss, reputational harm, emotional distress, interference with business relationships, and increased litigation expenses.

**COUNT V**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS (FLORIDA LAW)**
*(As to All Defendants)*

71.   Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

72.   Plaintiff, via his company DeMajio Media LLC, maintains ongoing and identifiable business relationships with viewers, subscribers, advertisers, sponsors, and online platforms that rely on his journalism and commentary. These relationships generate revenue, professional opportunities, and audience engagement essential to Plaintiff's livelihood. These business relationships were specific, ongoing, and identifiable, and not merely speculative or potential.

73.   Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 had actual knowledge of Plaintiff's business relationships. Defendants monitored Plaintiff's online content, tracked his audience

15

interactions, and repeatedly referenced Plaintiff's platforms and viewership in their enforcement filings and communications.

74.    Acting intentionally and without lawful justification, Defendants interfered with Plaintiff's business relationships by:

     a.   filing serial enforcement motions and sanctions requests designed to damage Plaintiff's reputation and credibility;

     b.   submitting Dkt. 233 and other filings seeking judicial orders to silence Plaintiff's reporting;

     c.   demanding deletion of content unrelated to Defendants, thereby disrupting Plaintiff's audience engagement and platform algorithms;

     d.   attempting to obtain Plaintiff's Florida financial records, causing fear, instability, and disruption in Plaintiff's business operations;

     e.   making false statements accusing Plaintiff of ongoing "defamation" and wrongdoing, thereby undermining Plaintiff's professional standing with viewers, advertisers, and platforms.

75.    Defendants' actions were undertaken with the intent to harm Plaintiff's business, DeMajio Media LLC, suppress his reporting, and deter third parties from associating with him.

76.    As a direct and proximate result of Defendants' intentional and unjustified interference, Plaintiff and his company, DeMajio Media LLC, suffered financial loss, reputational harm, loss of audience engagement, platform instability, and damage to advertiser and subscriber relationships.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FLORIDA LAW)
### *(As to All Defendants)*

77.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far

16

above and incorporates the same as if fully set forth at length herein.

78.     Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 engaged in conduct that was extreme, outrageous, and beyond all possible bounds of decency, including but not limited to:

    a.  filing serial enforcement motions and sanctions requests long after the Minnesota case had closed;

    b.  submitting Dkt. 233 to compel ongoing judicial monitoring of Plaintiff's speech despite the court's jurisdictional limitation;

    c.  demanding deletion of content that did not mention Defendants;

    d.  attempting to subpoena Plaintiff's Florida bank accounts, Apple account, and other personal financial records without lawful basis;

    e.  submitting false or misleading filings in Plaintiff's bankruptcy case to interfere with estate administration;

    f.  seeking gag orders, forced apologies, and confession-of-judgment provisions designed to humiliate and coerce Plaintiff;

    g.  engaging in coordinated monitoring of Plaintiff's online activity to identify content for retaliatory enforcement.

79.     This conduct occurred repeatedly over an extended period, demonstrating a sustained pattern of harassment rather than isolated or trivial acts.

80.     Defendants' conduct was intentional, malicious, and undertaken with reckless disregard for Plaintiff's emotional well-being. Defendants knew or should have known that their actions, particularly attempts to invade Plaintiff's financial accounts and misuse judicial process to silence him, would cause severe emotional harm.

81.     As a direct and proximate result of Defendants' extreme and outrageous conduct,

17

Plaintiff suffered severe emotional distress, including anxiety, fear, humiliation, mental anguish, and disruption of daily life and professional functioning.

82.    Plaintiff is entitled to compensatory damages, punitive damages, and all relief available under Florida law.

## COUNT VII
## CYBERSTALKING / HARASSMENT (FLA. STAT. § 784.048)
### *(As to All Defendants)*

83.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

84.    Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 engaged in a course of conduct involving repeated electronic communications, online monitoring, and digital harassment directed at Plaintiff in Florida. This conduct included:

    a.  monitoring Plaintiff's online content and social-media activity for the purpose of identifying material to use in retaliatory filings;

    b.  sending or submitting electronic communications, enforcement motions, sanctions requests, and Dkt. 233 targeting Plaintiff's speech;

    c.  electronically transmitting demands for content deletion, gag orders, and forced apologies;

    d.  attempting to use electronic means to obtain Plaintiff's Florida bank records, Apple account information, and other personal financial data;

    e.  coordinating with unknown individuals (John Does 1–5) to track Plaintiff's online presence and identify content for retaliatory enforcement.

85.    This conduct occurred repeatedly over an extended period, demonstrating a sustained pattern of electronic harassment rather than isolated or trivial acts.

18

86.     These electronic communications and monitoring activities served no legitimate purpose. Defendants' actions were not undertaken to resolve any lawful dispute but to harass, intimidate, silence, and retaliate against Plaintiff for engaging in protected First Amendment activity.

87.     Defendants' conduct caused Plaintiff substantial emotional distress, including fear, anxiety, humiliation, and disruption of his daily life and professional functioning. Defendants knew or should have known that their repeated electronic harassment and surveillance would cause such distress.

88.     Defendants' actions constitute cyberstalking and harassment under Fla. Stat. § 784.048, entitling Plaintiff to damages and all relief available under Florida law.

## COUNT VIII
## DEFAMATION (FLORIDA LAW)
### (As to All Defendants)

89.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

90.     Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 made false statements of fact about Plaintiff outside privileged litigation contexts, including but not limited to:

    a.   publicly accusing Plaintiff of ongoing "defamation" and wrongdoing unrelated to any content mentioning Defendants;

    b.   asserting that Plaintiff continued to violate the Minnesota settlement agreement when the content at issue did not reference Defendants;

    c.   making statements implying Plaintiff engaged in unlawful, unethical, or improper conduct as a journalist;

    d.   disseminating accusations designed to portray Plaintiff as dishonest, malicious,

19

or professionally untrustworthy.

91.     These statements were presented as factual assertions, not opinions, and were capable of being proven true or false.

92.     These false statements were published to third parties, including members of Defendants' church, associates, online audiences, and individuals involved in preparing enforcement submissions. Defendants intended these statements to reach others and to damage Plaintiff's reputation.

93.     Defendants made these statements with actual malice, meaning they knew the statements were false or acted with reckless disregard for their falsity. Defendants were fully aware that Plaintiff's reporting did not mention them, that the Minnesota court lacked jurisdiction over new content, and that Plaintiff had not engaged in any wrongdoing. Nevertheless, Defendants continued to publish false accusations to harm Plaintiff.

94.     Defendants' false statements were not privileged, were not made in good faith, and served no legitimate purpose. They were made to retaliate against Plaintiff for engaging in protected First Amendment activity and to damage his professional standing.

95.     As a direct and proximate result of Defendants' defamatory statements, Plaintiff suffered reputational harm, loss of business opportunities, financial damages, emotional distress, and damage to relationships with viewers, subscribers, advertisers, and platforms.

96.     Plaintiff is entitled to compensatory damages, punitive damages, and all relief available under Florida law.


**COUNT IX**
**CIVIL CONSPIRACY (FLORIDA LAW)**
*(As to All Defendants)*

97.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

20

98. Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 entered into an agreement, combination, or understanding to suppress Plaintiff's protected speech, interfere with his business relationships, and misuse judicial and bankruptcy processes to retaliate against Plaintiff.

99. The conspiracy's unlawful objectives included:

   a. silencing Plaintiff's reporting on matters of public concern;

   b. damaging Plaintiff's professional reputation and business relationships;

   c. coercing Plaintiff into deleting content unrelated to Defendants;

   d. misusing judicial process to obtain state-backed enforcement against Plaintiff;

   e. invading Plaintiff's financial privacy through improper subpoena attempts;

   f. interfering with Plaintiff's Chapter 7 bankruptcy administration.

100. These unlawful objectives were carried out through underlying tortious acts, including abuse of process, defamation, intentional infliction of emotional distress, cyberstalking, and tortious interference with business relationships.

101. In furtherance of this conspiracy, Defendants committed multiple overt acts, including but not limited to:

   a. filing serial enforcement motions and sanctions requests in the Minnesota federal action;

   b. submitting Dkt. 233 seeking continued judicial monitoring of Plaintiff's speech despite the court's jurisdictional limitation;

   c. attempting to subpoena Plaintiff's Florida bank accounts, Apple account, and other personal financial records without lawful basis;

   d. submitting false or misleading filings in Plaintiff's bankruptcy case;

   e. demanding deletion of content that did not mention Defendants;

21

f.   coordinating with unknown individuals (John Does 1–5) to monitor Plaintiff's online activity and identify content for retaliatory enforcement.

102.   Defendants acted intentionally, maliciously, and in concert, each participating in, directing, or ratifying the conspiracy's unlawful acts.

103.   As a direct and proximate result of Defendants' civil conspiracy, Plaintiff suffered financial loss, reputational harm, emotional distress, interference with business relationships, and disruption of bankruptcy administration.

**COUNT X**
**FLORIDA ANTI-SLAPP (FLA. STAT. § 768.295)**
*(As to All Defendants)*

104.   Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

105.   Plaintiff's journalism and commentary constitute protected speech under the First Amendment and protected participation in public discourse under Fla. Stat. § 768.295 (Florida's anti-SLAPP or Strategic Lawsuits Against Public Participation statute), as Plaintiff reports on matters of public concern involving religious organizations, public figures, and community issues.

106.   Defendants Bishop Wayne R. Felton, The Holy Christian Church International, Darryl Moore, John Tyrone Johnson, and John Does 1–5 engaged in retaliatory litigation conduct, including serial enforcement motions, sanctions requests, demands for gag orders, and the filing of Dkt. 233, for the primary purpose of silencing Plaintiff's lawful speech and punishing him for engaging in protected expressive activity. These actions were undertaken primarily because of Plaintiff's protected speech, satisfying the statutory requirement that the challenged conduct be based on participation in public discourse.

107.   Defendants' actions constitute a Strategic Lawsuit Against Public Participation (SLAPP) because they were not undertaken to resolve any legitimate legal dispute, but to

22

intimidate, censor, and retaliate against Plaintiff for speaking publicly about matters of public concern.

108. Defendants' misuse of judicial process, including attempts to obtain Plaintiff's Florida financial records, demands for deletion of content unrelated to Defendants, and efforts to compel ongoing judicial monitoring of Plaintiff's speech, served no legitimate purpose and were designed to chill Plaintiff's participation in public discourse.

109. As a direct and proximate result of Defendants' SLAPP conduct, Plaintiff suffered financial damages, emotional distress, reputational harm, and interference with business relationships.

110. Pursuant to Fla. Stat. § 768.295, Plaintiff is entitled to damages, attorney's fees, costs, and all other relief authorized under Florida's Anti-SLAPP statute.

## DAMAGES

111. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered economic and non-economic damages, including but not limited to: financial losses; emotional distress; reputational harm; interference with business and professional relationships; loss of audience engagement and platform stability; disruption of bankruptcy administration; and other injuries recognized under federal and Florida law.

112. Plaintiff seeks all forms of damages available under 42 U.S.C. §§ 1983, 1985(3), and 362(k) and Florida law, including compensatory damages, punitive damages, statutory damages, actual damages for stay violations, attorney's fees, costs, and any additional relief the Court deems just and equitable.

**PRAYER FOR RELIEF**

113.    **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff DE'MARIO JIVES respectfully demands judgment against Defendants BISHOP WAYNE R. FELTON, THE HOLY CHRISTIAN CHURCH INTERNATIONAL, DARRYL MOORE, JOHN TYRONE JOHNSON, and JOHN DOES 1–5, jointly and severally, and requests:

a.  General damages for emotional distress, reputational harm, humiliation, and other non-economic injuries recognized under federal and Florida law;

b.  Compensatory damages for economic losses, interference with business relationships, loss of audience engagement, and disruption of bankruptcy administration;

c.  Punitive damages for Defendants' intentional, malicious, reckless, and willful conduct;

d.  Statutory damages as authorized under 42 U.S.C. §§ 1983, 1985(3), 362(k) and Fla. Stat. § 768.295;

e.  Attorney's fees and costs pursuant to 42 U.S.C. § 1988, 11 U.S.C. § 362(k), and applicable Florida law;

f.  Pre-judgment and post-judgment interest as allowed by law;

g.  Equitable relief, including injunctive or declaratory relief as the Court deems just and proper; and

h.  Any further relief the Court deems equitable and just.

## JURY DEMAND

114.    Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

115.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: July 29, 2026

Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiff*

25