**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DE'MARIO JIVES,

Plaintiff,

v.

Case No.: 8:26-cv-2193-JLB-AEP

BISHOP WAYNE R. FELTON, THE HOLY CHRISTIAN CHURCH INTERNATIONAL, DARRYL MOORE, JOHN TYRONE JOHNSON, and JOHN DOES 1–5,

Defendants.
______________________________________/

**DEFENDANT BISHOP WAYNE R. FELTON AND THE HOLY CHRISTIAN CHURCH INTERNATIONAL'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1) and (6), Defendants, Bishop Wayne R. Felton ("Bishop Felton") and the Holy Christian Church International (the "Church") (collectively, "Defendants"), move to dismiss the Complaint [ECF No. 1] filed by Plaintiff De'Mario Jives ("Jives"). The Complaint includes ten counts, but in reality it simply repackages the same basic grievances again and again under different legal labels, none of which properly states a claim for relief. Thus, the Complaint should be dismissed in its entirety and, as discussed below, most of the counts should be dismissed *with prejudice*. Additional grounds for this Motion are provided in the following Memorandum of Law.

## MEMORANDUM OF LAW

### Statement Regarding Bankruptcy And Standing

On May 21, 2026, before initiating this lawsuit, Jives filed a petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida, Case No. 8:26-bk-04383-CED ("Bankruptcy Proceeding"). Although the bankruptcy automatic stay does not prohibit Defendants from defending this action, *see In re Rogers*, 251 B.R. 626, 629 (Bankr. N.D. Fla. 2000), Defendants want to ensure the Court's awareness of the pending Bankruptcy Proceeding.

Moreover, to the extent the Complaint is based upon activities that occurred prior to May 21, 2026, claims arising from those activities should belong to the bankruptcy estate and thus Jives lacks standing to pursue them. "Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." *Id.*

The Complaint is substantially based on alleged actions occurring prior to May 21, 2026. For example, the Complaint alleges that after Jives and Defendants entered into a settlement agreement in 2024, Defendants took actions "to intimidate Plaintiff, exhaust his resources, and suppress his reporting." Comp. ¶¶ 19-20. It also alleges that "[b]etween January 2025 and June 2026 [*i.e.*, during the 17 months *before* the bankruptcy petition], Defendants filed at least six enforcement motions and

sanctions requests, each asserting violations unrelated to any content mentioning Defendants." *Id.* ¶ 21. Without specifying the timeframe, the Complaint also alleges that Defendants "repeatedly sought to invoke state and federal judicial authority to compel Plaintiff's silence," *id.* ¶ 26, and that Defendants' conduct "occurred repeatedly over an *extended period*." *Id.* ¶ 39 (emphasis added). Each of these allegations is incorporated into every count of the Complaint.

Thus, some or all of the Complaint's ten counts should be the property of the bankruptcy trustee. Because the bankruptcy trustee is not a party to this action, the Complaint should be dismissed for lack of standing. *See In re Ragucci*, 433 B.R. 889, 898 (Bankr. M.D. Fla. 2010) (dismissing pre-petition claim brought by debtor, rather than trustee, for lack of standing).[1]

**Overview of this Case**

Jives states that he has filed this lawsuit "to redress a sustained pattern of harassment, litigation abuse, and unlawful interference" directed at him by Defendants and others. Comp. ¶ 1. Nothing could be further from the truth. In reality, in 2023, Defendants sued Jives and his company, DeMajio Media LLC, for defamation in the U.S. Distict Court for the District of Minnesota ("MN Case"). The parties resolved the MN Case via a Settlement Agreement. *Id.* ¶ 19. But beyond court

[1] Although the Complaint places substantial reliance on actions occurring prior to the bankruptcy petition, Jives's Amended Schedule A/B in the Bankruptcy Proceeding (which lists all of Jives's personal property and assets as of June 3, 2026) state that Jives had "No" claims against third parties or other contingent or unliquidated claims. *See* ECF No. 8, Case No. 8:26-bk-04383-CED. Thus, the matters complained of here are contrary to his bankruptcy filings.

filings, Defendants have *never* published or made any statement about Jives or encouraged or instructed anyone else to do so. Thus, Jives has not filed this lawsuit to redress harassment; he has filed it with the improper aim of avoiding his Settlement Agreement obligations.

At its core, the Complaint simply alleges that after entering into the Settlement Agreement, Defendants have sought judicial intervention to enforce its terms. *Id.* ¶¶ 20, 21, 24, 27-30. Other than those litigation-related actions, the Complaint vaguely (and falsely) alleges that Defendants made electronic communications about Jives and monitored his online platforms (*i.e.*, publicly available platforms). *Id.* ¶¶ 31, 35. None of this alleged conduct is tortious, unlawful, or actionable, but the Complaint attempts to spin it into ten separate causes of action, including federal civil rights violations, intentional infliction of emotional distress, and cyberstalking. The Complaint wholly fails to state a claim for relief and should be dismissed.

**Motion to Dismiss Standard**

"When evaluating a motion to dismiss under Rule 12(b)(6), a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiffs." *Persaud Props. FL Invs, LLC v. Town of Fort Myers Beach, Fla.*, 593 F. Supp. 3d 1129, 1136 (M.D. Fla. 2022). "Importantly, though, this maxim does not apply to legal conclusions. Courts are 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the Complaint's factual allegations must plead a claim for relief that is plausible on its face. "A claim has

facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, pleadings that "are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. And, of course, the Court may consider documents incorporated by reference. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). If the incorporated documents contradict the pleadings, the incorporated documents govern. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

## Argument

### I. Count I Fails to State a Claim Under 42 USC § 1985(3) and Should be Dismissed with Prejudice.

Jives alleges in Count I that Defendants conspired to infringe his First Amendment rights. Comp. ¶ 42. However, Jives fails to allege that he is a member of a protected class as required under 42 U.S.C. § 1985(3). Accordingly, he cannot plead facts establishing a private civil conspiracy, and therefore Count I fails to state a claim and should be dismissed with prejudice.

Section 1985(3) provides a remedy for conspiracies to interfere with civil rights. To state a conspiracy claim under § 1985(3), a plaintiff must allege "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Childree v. UAP/GA Chem., Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996). To satisfy the second element, a plaintiff must show that he is a member of a protected class and that his membership in that class induced the alleged discrimination or deprivation of rights. *See generally*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 n.4 (1993); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

There are "[t]wo types of classes [that] come within § 1985(3)'s protection: (1) classes having common characteristics of an inherent nature – i.e., those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Childree*, 92 F.3d at 1147; *see Griffin*, 403 U.S. at 102 ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."). Thus, a § 1985(3) plaintiff must allege "a showing of some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind'" the purpose of alleged conspirators' action. *Childree*, 92 F.3d at 1147; *Dean v. Warren*, 12 F.4th 1248, 1255–56 (11th Cir. 2021).

Consistent with these parameters, the Eleventh Circuit has "declined to extend [§ 1985(3)] to apply in non-racial contexts." *Id*. Despite this controlling law, Jives alleges that Defendants targeted him because he is a journalist and therefore a

member of a "a protected class of individuals engaged in expressive activity under the First Amendment." Comp. ¶ 45. But journalists are not a protected class for the purposes of § 1985(3), and no court has found them to be. *See, e.g., D'Amario v. Russo*, 718 F. Supp. 118, 123 (D. R.I. Jul. 21, 1989); *see also*, *e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 684–85 (1972) (explaining that "newsmen" have no superior rights to information or access not available to the public generally); *Hutchens v. Beckham*, 521 F. Supp. 426, 429 (S.D. Ga. Sept. 9, 1981). Therefore, Count I should be dismissed with prejudice.

Moreover, Jives claims that Defendants engaged in a conspiracy to infringe upon his rights as a journalist under the First Amendment. Comp.¶¶ 42, 45. But Section 1985(3) only provides First Amendment protection where "the state [is] somehow involved in or affected by the conspiracy." *United Bhd. of Carpenters and Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983) (explaining that violations of the freedom of speech clause require state action based on the First Amendment's text and purpose); *Turner v. Williams*, No. 3:19-cv-641-J-32PDB, 2020 WL 1904016, at * 11 (M.D. Fla. Apr. 17, 2020).

Defendants are not state actors and Count I never alleges that Defendants have any connection to – much less have taken any action on behalf of – a state government. At most, the Complaint contends that Defendants have filed papers in various federal court proceedings. But that is not *state* action. *See D.C. v. Carter*, 409 U.S. 418, 424 (1973) (explaining that "actions of the Federal Government and its officers are beyond the purview of the" Fourteenth Amendment for state action

purposes); *see also Cobb v. Ga. Power Co.*, 757 F.2d 1248, 1251 (11th Cir. 1985) ("[O]ne who has obtained a state court order or judgment is not engaged in state action merely because it used the state court legal process."). Relatedly, the Complaint makes no assertion that Defendants conspired with or bribed members of any court. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 29 (1980) (holding that "[p]rivate parties who corruptly conspire with a judge in connection with [judicial action] are thus acting under color of state law[.]"). Because journalists are not members of a protected class and Jives cannot plead state action, Count I should be dismissed with prejudice.

## II. Count II Fails to State a Claim Under 42 USC § 1983 and Should be Dismissed with Prejudice.

Section 1983 creates civil liability for anyone who violates a person's constitutional rights while acting under color of state law. To state a Section 1983 claim, a plaintiff must allege that: (1) a defendant deprived him of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998).

Jives claims that Defendants "acted under the color of state law" to suppress his freedom of speech and "interfere with his constitutional rights" by filing motions to enforce the Settlement Agreement, requesting judicial enforcement of sanctions, and making other court filings. Comp. ¶¶ 51–54. But "[u]se of the courts by private parties does not constitute an act under color of state law." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

To satisfy the requirement of pleading activity "under color of state law" in

connection with state court proceedings, Jives would have to allege that Defendants "corruptly conspired with a [state] judge." *Dennis*, 449 U.S. at 29. The Complaint makes no such allegation and could not do so in good faith. In fact, while the Complaint refers to "state and federal judicial machinery" and "state and federal court authority," *see* Comp. ¶¶ 26, 50, 51, the only judicial proceedings in which Plaintiff has been a party along with Defendants are *federal* proceedings in Minnesota and Florida. The Complaint never identifies any relevant *state court* proceeding (by case name, case number, court, judge, or any other information) because no such proceedings have occurred. The Complaint's disingenuous references to "state" judicial proceedings cannot convert federal proceedings into state court proceedings. And, of course, even "[t]he naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action." *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). All of this is academic, however, because the Complaint never alleges a corrupt conspiracy with any state court actor. Thus, Count II fails and should be dismissed with prejudice.

## III. Count III for Willful Violation of the Bankruptcy Stay Fails Because it Pleads Only Vague, Conclusory Legal Labels, Not Sufficient Facts.

Jives initiated his Chapter 7 bankruptcy proceeding in May 2026. He claims in Count III that Defendants violated the automatic stay in breach of 11 U.S.C. § 362(k). To plead such a claim, Jives must allege: "(1) that [Defendants] knew of the existence of the stay; (2) that [Defendants'] actions were willful; and (3) that [those]

actions violated the automatic stay." *In re With Purpose, Inc.*, 182 F. 4th 457, 461 (5th Cir. 2026). But Jives has not properly pled these elements. Count III suffers from at least four key defects that require dismissal.

First, the Complaint is premised upon improper group pleading, merely alleging in conclusory fashion that "Defendants" –including not only Bishop Felton and the Church, but also Defendants Darryl Moore, John Tyrone Johnson, and "John Does 1-5" – collectively undertook various actions, without any particular action being ascribed to any specific Defendant. *See, e.g.*, Comp. ¶¶ 19-22, 24-40 (uniformly alleging various activities by undifferentiated "Defendants"). Nor does the Complaint identify how any Defendant individually violated Section 362(k). Pleadings must "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1206 (S.D. Fla. 2021) (internal quotation omitted). When they fail to do so by, for example, "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," the pleadings violate Rule 8(a)(2) and the claims should be dismissed. *Id.* (internal quotation omitted). Relatedly, because the Complaint fails to distinguish between the Defendants, its allegations of willful behavior also are insufficient. The Complaint fails to allege that any named Defendant undertook any action in willful violation of the bankruptcy stay. Insofar as Count III is premised on the alleged actions of Defendants Moore, Johnson, and the John Does, those actions plainly are not sufficient to allege that *Bishop Felton* or the *Church* willfully violated the stay.

Thus, Count III should be dismissed.

Second, to the degree that Count III is based upon 11 U.S.C. § 362(a)(3), the automatic stay invoked by Jives expressly applies only to property of the bankruptcy estate. "If property is not property of the estate, then the automatic stay does not protect it." *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, 254 B.R. 46, 56 (Bankr. M.D. Fla. 2000); *In re Burnsed*, 224 B.R. 496, 498 (Bankr. M.D. Fla. 1998). But here, the Complaint never alleges that any particular property at issue in Count III is the property of the estate. Accordingly, any part of Count III based upon Section 362(a)(3) should be dismissed.

Third, the Complaint alleges that Defendants "submitted filings *in Plaintiff's bankruptcy case* asserting false debts and attempting to interfere with the administration of the estate." Comp. ¶ 30 (emphasis added). According to the Complaint, "[t]hese actions constitute willful violations of 11 U.S.C. § 362(k)." *Id.* But this argument is plainly wrong because "the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay." *In re Uni-Marts, LLC*, 399 B.R. 400, 418 (Bankr. D. Del. 2009) (collecting cases; internal quotation omitted*); see also In re Erkelens*, 2015 WL 631424, at *2 (M.D. Fla. Jan. 22, 2015) ("actions that are specifically permitted under the Bankruptcy Code do not violate the automatic stay") (internal quotation omitted). Indeed, "[t]he automatic stay serves to protect the bankruptcy estate from actions taken by creditors *outside the bankruptcy court forum*, not legal actions taken within the bankruptcy court." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008)

(emphasis added; internal quotation omitted). Thus, where Count III is based upon filings in the Bankruptcy Proceeding, the claim fails and must be dismissed.

Fourth, Jives's allegations of injury are merely conclusory. Jives fails to identify any out-of-pocket losses or costs directly traceable to any alleged violation of the stay or how the violation caused such damages. To the extent Jives claims "emotional distress," he never alleges, and could not plausibly allege, the level of significant emotional distress for which Section 362(k) might, theoretically, provide relief. *See Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014) (explaining "not every willful violation of the stay merits compensation for emotional distress" and thus plaintiff must show "significant emotional distress," "clearly establish[ed]," and caused by a violation of the stay). And despite his allegations that a violation of the automatic stay caused "disruption of the bankruptcy estate [or] interference with the trustee's duties," Comp. ¶ 63, Jives fails to allege any facts explaining what the disruption or interference entailed. Moreover, such alleged damages relating to judicial processes are far too inchoate and speculative to support a claim under Section 362(k). Thus, Count III should be dismissed.

## IV. Florida's Litigation Privilege Bars the State-Law Tort Claims Premised on Litigation-Related Conduct.

Florida's litigation privilege bars Jives's state-law tort theories (Counts IV-X) to the extent they are premised on conduct during and related to judicial proceedings. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.*

*Co.*, 639 So. 2d 606, 608–09 (Fla. 1994). The privilege applies to and bars all statutory and common law claims. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). In *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So. 3d 240 (Fla. 3d DCA 2011), for example, Florida's Third DCA affirmed dismissal with prejudice of an abuse-of-process claim based on counsel's issuance of subpoenas and writs of garnishment in aid of executing a federal judgment. *Id.* at 240–43. Critically, the privilege affords absolute immunity from suit for acts occurring during a judicial proceeding so long as the acts have some relation to that proceeding. *Levin*, 639 So. 2d at 608.

Because the absolute privilege provides immunity from suit – and not merely a defense to liability – it provides a basis for dismissal where its applicability is established by the pleadings. *Grippa v. Rubin*, 133 F.4th 1186, 1194–95 (11th Cir. 2025); *LatAm*, 88 So. 3d at 243. Here, the Complaint repeatedly identifies the alleged wrongs as enforcement filings in the MN Case, post-judgment discovery in Florida, bankruptcy filings, sanctions requests, and statements in "enforcement submissions." Comp. ¶¶ 66, 74, 78, 90–92, 100–01. Thus, the Complaint locates the alleged conduct in, and relates it to, the MN Case, the Florida post-judgment proceeding, and the Florida bankruptcy proceedings. Any claims arising from such alleged conduct are barred by the privilege. Indeed, subjecting litigants to a subsequent civil action based on their conduct in prosecuting or defending an earlier proceeding is precisely what the litigation privilege is designed to prevent. *LatAm*, 88 So. 3d at 242–43. Accordingly, to the extent Counts IV through X rest on filings, sanctions

requests, discovery or collection processes, or statements made in judicial proceedings, they are barred and must be dismissed with prejudice.

## V. Count IV Fails to State a Claim for Abuse of Process.

Count IV fails to state a claim for abuse of process. Such a claim requires Jives to allege that "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *Marcosquared, LLC v. Wilkes*, No: 8:25-cv-3146-CEH-LSG, 2026 WL 1900292, at *3 (M.D. Fla. Jul. 2, 2026) (internal quotation omitted). Critically, misuse of process must occur *after* its issuance to accomplish an unlawful collateral objective. *Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983).

Count IV does not identify a specific process that any particular Defendant used *after* issuance for a purpose collateral to its intended function. Instead, grouping all Defendants together without distinction, it simply lists various enforcement motions, sanctions requests, purported subpoena attempts, bankruptcy filings, and requests for litigation relief, and asserts as a foregone conclusion that these actions must constitute "abuse." Comp. ¶¶ 66–70. But the Complaint does not identify a single, concrete action taken by any Defendant that would constitute an "illegal, improper, or perverted use of process" after its issuance.

Even accepting as true the Complaint's bald and unsupported assertion that Defendants acted with an improper purpose, an improper purpose standing alone is not sufficient to support an abuse of process claim. *See Peckins*, 443 So. 2d at 1026

(allegations that process was used to force plaintiffs to incur "undue and inordinate expenditures of their time and money" insufficient); *Marcosquared*, 2026 WL 1900292, at *4 (allegations that defendant sought to pressure plaintiffs by "running up their legal fees" and drafting "perjurious affidavits" insufficient). Here, the challenged filings sought enforcement of the Settlement Agreement, sanctions, civil contempt, and related judicial relief. *See Felton v. Jives*, No. 0:23-cv-00467-DTS, ECF Nos. 40, 95, 138, 147, 167 (D. Minn. Sept. 26, 2024–Nov. 19, 2025). This is the very relief those proceedings were designed to provide.

Critically, the only judicial filing specifically identified in the Complaint – the Dkt. 233 filing in the MN Case, *see* Comp. ¶ 24. – plainly does not support an abuse of process claim because, although the Complaint alleges that Defendants filed Dkt. 233 after the Minnesota case closed, it identifies no act by which Defendants misused Dkt. 233 *after filing it*.[2] *See Peckins*, 443 So. 2d at 1026 (requiring misuse of process "after its issuance"). Count IV should be dismissed with prejudice.

## VI. Plaintiff's Tortious Interference Claim, Count V, Does Not Identify an Existing Business Relationship or Plausible Causation.

Count V fails for several reasons. To plead a claim for tortious interference, Jives must plead: (1) the existence of a contract or protected business interest, (2) Defendants' knowledge of the relationship, (3) Defendants' intentional and

[2] On its face, Dkt. 233, which was titled "Plaintiff's Motion for Clarification Regarding Dkt. 232 and the Court's Continuing Enforcement Authority," was simply seeking clarification that the MN Court's June 10 order did not moot the Court's prior enforcement orders. Seeking such clarification is not tortious conduct.

unjustified interference with the relationship, and (4) and damages caused as a result of the interference. *Castelli v. Select Auto Mgm't., Inc.*, 63 So. 3d 52, 53 (Fla. 2d DCA 2011). The Complaint fails to make these allegations.

One key deficiency is that the Complaint never identifies the alleged customers or vendors with whose business relationships Defendants interfered. This is fatal because "Florida law requires a plaintiff to identify the specific business relationship the defendant allegedly interfered with." *AccessNinja, Inc. v. PassNinja, Inc.*, No. 24-cv-24745-ALTMAN/Lett, 2025 WL 2171606, at *12 (S.D. Fla. Jul. 31, 2025); *see also Shopping Center Interest, LLC v. Tab 250, Ltd.*, 433 So. 3d 406, 417 (Fla. 4th DCA 2026) ("a tortious interference claim is legally insufficient and subject to dismissal for failure to state a claim if it does not specify any parties with whom the plaintiff had and understanding or agreement") (internal quotation omitted).

Count V refers vaguely to "viewers, subscribers, advertisers, sponsors, and online platforms," Comp. ¶ 72, but such generic allegations are insufficient as a matter of law. *AccessNinja*, 2025 WL 2171606, at *12. Relatedly, because the Complaint fails to identify any protectable contract or business relationships, it cannot plausibly plead that Defendants had knowledge of such purported relationships. Similarly, the Complaint's conclusory assertion that Jives suffered a "loss of audience engagement," "platform instability," or harm to advertiser and subscriber relationships, *see* Comp. ¶¶ 37, 74–76, is insufficient to plead that Defendants caused any actionable harm, because "either 'breach' or 'termination' of a business relationship or expectancy is necessary to establish interference." *Anthony*

*Distribs., Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1572 (M.D. Fla. 1996).[3] Because Jives cannot allege any of the key elements of tortious interference, Count V should be dismissed with prejudice.

## VII. Count VI Does Not Plead Extreme and Outrageous Conduct.

In Count VI, Jives attempts to plead a claim for intentional infliction of emotional distress (IIED), but such a claim requires pleading intentional or reckless conduct that is so extreme and outrageous as to exceed all possible bounds of decency, causing severe emotional distress. *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). The threshold is a demanding one: conduct does not become actionable merely because it was intentional, malicious, tortious, or aggravating. And "[w]hether conduct is outrageous enough to support a claim for intentional infliction of emotional distress is a question of law" to be decided by the court. *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (internal quotation omitted).

The conduct vaguely referenced in the Complaint comes nowhere near meeting this high bar. At most, Count VI repackages the same litigation and enforcement conduct alleged in Count IV: motions, sanctions requests, the Dkt. 233

---

[3] The Complaint never clearly articulates the alleged activities purportedly constituting tortious interference. Nevertheless, the record in MN Case (which is a matter as to which this Court may take judicial notice) shows the Court rejected Jives's request for prefiling restrictions and held that Felton was entitled to identify violations of the Settlement Agreement and seek enforcement. *Felton v. Jives*, No. 0:23-cv-00467-DTS, ECF No. 215 at 1–2 (D. Minn. Feb. 6, 2026). In other words, such conduct was legally authorized.

filing, demands to delete content, purported subpoena efforts, bankruptcy filings, and the monitoring of publicly available online activity. Comp. ¶¶ 77–82. To the extent this alleged conduct occurred in connection with judicial proceedings, it is privileged and cannot support an IIED claim. *See, e.g.*, *Levin*, 639 So. 2d at 608.

But even if any of the alleged conduct was not related to judicial proceedings, it still cannot support an IIED claim. No Florida case has ever held that requesting that a plaintiff take down an online publication or that monitoring a plaintiff's publicly available online activity constitutes IIED. Such conduct is not even tortious, let alone beyond all bounds of decency in a civilized society. Relatedly, the Complaint does not plausibly plead that Jives has suffered severe emotional distress "of such a substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018). In *Rincon v. Miami-Dade Cnty.*, No. 16-CV-22254-GAYLES/MCALILEY, 2020 WL 7344633 (S.D. Fla. Mar. 31, 2020), for example, the plaintiffs alleged that, because of a shooting, they experienced "severe physical, mental and emotional injuries, and loss of enjoyment of life," but even those allegations were "not enough" to plead the severe emotional distress necessary to support an IIED claim. *Id.* at *11 (dismissing IIED claim). The Complaint here likewise fails to plead a viable IIED claim. Because the conduct supporting Count VI cannot satisfy the heavy burden for pleading IIED as a matter of law, it should be dismissed with prejudice.

## VIII. Count VIII, for Defamation, Fails to Identify Any Actionable, Nonprivileged Statements.

Count VIII attempts to assert a claim for defamation. But this attempt fails because the Complaint neither identifies an actionable false statement of fact nor distinguishes privileged litigation communications from any allegedly nonprivileged publication. A defamation claim requires publication of a false and defamatory statement of fact about the plaintiff, the requisite degree of fault, and actual damages, among other things. *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018). A false statement of fact is indispensable; true or substantially statements, along with statements not readily capable of being proven false, are not actionable. *Id.*

Courts play a critical function in assessing defamation claims. Thus, "[w]hether the defendant's statements constitute defamation ... is a question of law for the court to determine." *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023) (internal quotation omitted). Accordingly, the Complaint must identify the allegedly defamatory statements with enough specificity that the Court can review and analyze the statements and the context in which they were made.

"In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rogdriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (dismissing defamation claim). Federal courts in Florida applying this standard have frequently dismissed defamation claims where the pleadings simply do not provide enough information about the allegedly defamatory

statements. *See, e.g.*, *id.*; *Grayson v. No Labels, Inc.*, No. 6:20-cv-1824-Orl-40LRH, 2021 WL 2869870, at *4 (M.D. Fla. Jan. 26, 2021) (dismissing defamation claim because allegations of defamatory publication were ambiguous); *Jetaire Aerospace, LLC v. AerSale Inc.*, No. 1:20-cv-25144-DPG, 2023 WL 9228307, at *5 (S.D. Fla. Nov. 28, 2023) (dismissing defamation counterclaim because pleadings "fail[ed] to identify the specific statements claimed to be defamatory"); *Malhotra v. Aggarwal*, No. 1:17-cv-24407-GAYLES/OTAZO-REYES, 2019 WL 3425161, at *2 (S.D. Fla. Jul. 30, 2019) (dismissing defamation claim because complaint "failed to provide an adequate description of the statements and time frame").

Here, the Complaint wholly fails to provide the necessary information about the allegedly defamatory statements. It fails to describe any statement with particularity and does not identify which Defendant made which statement, when or where the statement was made, whether the statement was written or oral, the recipient or audience, or the factual basis for falsity. Comp. ¶¶ 89–96. Instead, it falls back on threadbare recitations of the elements of defamation, including that Defendants made "false statements," accused the plaintiff of "wrongdoing," or implied "unethical" conduct. These allegations are wholly inadequate to state a defamation claim. *Five for Ent.*, 877 F. Supp. 2d at 1328; *Grayson*, 2021 WL 2869870, at *4. Because the Complaint pleads none of the key information needed to assess the purported validity of Jives's defamation claim, Count VIII should be dismissed with prejudice.

## IX. Because Florida Statute § 784.048 Does Not Authorize a Private Cause of Action for Cyberstalking, Count VII Should be Dismissed with Prejudice.

In Count VII, Jives accuses Defendants of cyberstalking under Florida Statute Section 784.048. But that statute does not provide a private cause of action for cyberstalking. Instead, the statute is part of the criminal code, and thus criminalizes certain types of stalking, rather than authorizing a civil claim for relief. As this Court has acknowledged, "[t]he text of § 784.048 confirms this reading." *Couture v. Noshirvan*, No.: 2:23-cv-340-SPC-KCD, 2023 WL 8280955, at *3 (M.D. Fla. Nov. 30, 2023) (dismissing with prejudice cyberstalking claim because no civil cause of action exists); *see also Goodison v. Ciccone*, No. 15-22705-CIV-MARTINEZ/MCALILEY, 2016 WL 4097551, at *4 (S.D. Fla. Feb. 11, 2016) (recommending dismissal with prejudice because civil action under § 784.048 "is impermissible"), *R&R adopted*, 2016 WL 4097554 (S.D. Fla. Mar. 21, 2016). Thus, Count VII should be dismissed with prejudice.

To the extent that Jives might respond by arguing that he is really trying to assert a claim under § 784.0485 (which does authorize a private cause of action), the claim still fails because this Court lacks jurisdiction to entertain it. Section 784.0485 "explicitly provides that a petition for an injunction against stalking may ***only be filed in the Florida circuit court*** for the circuit in which the petitioner resides, where the respondent resides, or where the stalking occurred." *Harvick v. Oak Hammock Pres. Cmty. Owners Ass'n Inc.*, No. 6:14-cv-937-Orl-40GJK, 2015 WL 667984, at *5 (M.D. Fla. Feb. 17, 2015) (emphasis added). "Consequently, this Court ***lacks the jurisdiction***

to consider [such a claim]." *Id.* (emphasis added). For this reason, and also because the Complaint fails to allege any activities by Defendants that constitute following, harassing, or cyberstalking without a legitimate purpose, *see id.* §§ 784.048 and 784.048(1)(a) & (1)(d), Count VII should be dismissed with prejudice.

**X. Count IX's Conspiracy Claim should be dismissed.**

In Count IX, Jives asserts a claim for civil conspiracy. Under Florida law, "the gist of a civil action for conspiracy is not conspiracy itself but the civil wrong which is done pursuant to the conspiracy, and which results in damage to the plaintiff." *Balcor Prop. Mgmt., Inc. v. Ahronovitz*, 634 So. 2d 277, 279 (Fla. 4th DCA 1994). Thus, if the underlying tort claim fails, the conspiracy claim fails. *Gacek v. Avalon Dunes Condo. Owners Ass'n., Inc.*, 431 So. 3d 299, 303 (Fla. 1st DCA 2026). Here, as demonstrated throughout this Motion, each of the Complaint's tort counts fails to state a claim for relief and must be dismissed. Accordingly, the conspiracy claim also fails and must be dismissed.

Moreover, a conspiracy claim "requires the combination of two or more persons – a meeting of two independent minds intent on one purpose." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). To survive a motion to dismiss, a plaintiff "must allege particularized facts that are more than vague or conclusory." *Debose v. Univ. S. Fla.*, 178 F. Supp. 3d 1258, 1272 (M.D. Fla. 2016) (internal quotation omitted). Simply alleging that Defendants "agreed" to a conspiracy or took actions "in furtherance" of a conspiracy is not sufficient to state a

conspiracy claim, because it merely "restates the language of a Florida conspiracy claim." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347 (11th Cir. 2025).

Here, the Complaint fails plausibly to allege any facts establishing an agreement among Defendants to do an unlawful act or a lawful act by unlawful means. The Complaint alleges coordination among Defendants "upon information and belief," Comp. ¶ 98, and parrots the elements of a conspiracy claim by pleading that Defendants entered into an "agreement, combination, or understanding." *Id.* But it alleges no non-conclusory facts showing when, where, or how any agreement was formed or how Defendants reached a meeting of the minds to commit an unlawful act. Such formulaic allegations do not plausibly establish a conspiratorial agreement. *Id.*; *see also Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1346 (S.D. Fla. 2018) (dismissing conspiracy claims where allegations of conspiracy were not supported by "sufficient facts demonstrating that any of the Defendants agreed to . . . do any . . . unlawful act").

Because the Complaint does not allege any viable underlying tort and merely alleges the existence of a conspiracy in vague and conclusory terms, Count IX should be dismissed with prejudice.

## XI. Count X Should be Dismissed with Prejudice Because Florida's Anti-SLAPP Statute Does Not Authorize a Cause of Action.

In Count X, Jives attempts to assert a claim under Florida Statute Section 768.295, the Anti-SLAPP statute. Count X must be dismissed because the Anti-

SLAPP statute provides a defense to defamation actions and similar claims attacking free speech but does not authorize an independent or proactive cause of action.

SLAPP is an acronym for "strategic lawsuit against public participation." The goal of the Anti-SLAPP statute is to prevent such strategic lawsuits directed against free speech. Thus, the Anti-SLAPP statute states that its purpose is

> to protect the right in Florida to exercise the rights of free speech in connection with public issues, . . . and petition for redress of grievances before the various governmental entities of this state as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

Fla. Stat. § 768.295(1).

Accordingly, the statute protects the exercise of free speech "***by prohibiting***" a person from filing a lawsuit "without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue." *McQueen v. Baskin*, 377 So. 3d 170, 175–76 (Fla. 2d DCA 2023) (quoting Fla. Stat. § 768.295(3) (emphasis added)). A plaintiff might violate the statute by bringing such a lawsuit; when he does, the statute provides that the person or entity improperly sued (*i.e.*, the defendant) "may *move the court* for an order *dismissing* the action or *granting final judgment* in favor of that person or entity." *Id.* § 768.295(3). In other words, the statute provides a mechanism for prohibiting and defending against a lawsuit, not an independent cause of action.

As the Florida Supreme Court has explained, "[l]itigants invoke this statute *when attempting to dispose of a prohibited lawsuit prior to trial*." *Vericker v. Powell*, 406 So. 3d 939, 941 (Fla. 2025) (emphasis added). Here, Jives is not attempting to dispose of

a prohibited lawsuit. Rather, he is asserting an affirmative claim for relief against Defendants. Because such an affirmative claim is not sanctioned under Section 768.295, Count X must be dismissed with prejudice.

**Conclusion**

WHEREFORE, Defendants respectfully request that the Court grant this Motion, dismiss the Complaint with prejudice, and grant such further and other relief as the Court deems necessary.

Respectfully submitted,

THOMAS & LOCICERO PL

*/s/ James J. McGuire*

James J. McGuire
Florida Bar No. 0187798
601 South Boulevard
Tampa, FL 33606
Tel: (813) 984-3062
Email:
jmcguire@tlolawfirm.com
bbrennan@tlolawfirm.com
smaxey@tlolawfirm.com

*Counsel for Defendants Bishop Wayne R. Felton and The Holy Christian Church International*

## GOOD FAITH CERTIFICATE

I HEREBY CERTIFY, pursuant to Local Rule 3.01(g), that on September 11, 2026, undersigned counsel engaged in a substantive conversation by telephone with Plaintiff's counsel, Robert S. Mactavish, in a good-faith effort to resolve the issues raised in this motion. Despite that good-faith effort, the parties have been unable to reach an agreement on the resolution of this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2026, I electronically filed a true and correct copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notice of the filing to the email address of all counsel of record.

By: */s/ James J. McGuire*
Attorney