**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DE'MARIO JIVES,

Plaintiff,

v.

Case No.: 8:26-cv-2193-JLB-AEP

BISHOP WAYNE R. FELTON, THE HOLY CHRISTIAN CHURCH INTERNATIONAL, DARRYL MOORE, JOHN TYRONE JOHNSON, and JOHN DOES 1–5,

Defendants.
_____________________________________/

**DEFENDANTS BISHOP WAYNE R. FELTON AND THE HOLY CHRISTIAN CHURCH INTERNATIONAL'S MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1) and (6), Defendants, Bishop Wayne R. Felton ("Bishop Felton") and the Holy Christian Church International (the "Church") (collectively, "Defendants"), move to dismiss the Amended Complaint [ECF No. 19] filed by Plaintiff De'Mario Jives ("Jives"). After Defendants moved to dismiss the original ten-count Complaint [ECF No. 16], Jives jettisoned four of his original claims, but the Amended Complaint still asserts six untenable claims. It alleges no tortious activity by Defendants and provides no basis for judicial relief, so it should be dismissed with prejudice. Additional grounds for this Motion are provided in the following Memorandum of Law.

**MEMORANDUM OF LAW**

**Statement Regarding Bankruptcy And Standing**

On May 21, 2026, before initiating this lawsuit, Jives filed a petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida, Case No. 8:26-bk-04383-CED ("Bankruptcy Proceeding"). Although the bankruptcy automatic stay does not prohibit Defendants from defending this action, *see In re Rogers*, 251 B.R. 626, 629 (Bankr. N.D. Fla. 2000), Defendants wish to apprise the Court of the pending Bankruptcy Proceeding.

Moreover, to the extent the Amended Complaint is based upon activities that occurred prior to May 21, 2026, claims arising from those activities belong to the bankruptcy estate and Jives lacks standing to pursue them. "Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker v. Wendy's Int'l, Inc.*,

365 F.3d 1268, 1272 (11th Cir. 2004). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." *Id.*

The Amended Complaint is largely based on actions occurring prior to May 21, 2026. For example, the Amended Complaint pleads that "[f]or *more than two years*, Defendants have engaged in a coordinated campaign to silence Jives' lawful journalistic activity, suppress his constitutionally protected speech, and damage his livelihood as a Florida-based commentator and reporter." Am. Comp. ¶ 1 (emphasis added). It also alleges that "[b]etween January 2025 and June 2026 [*i.e.*, including time during the *17 months before the bankruptcy petition was filed in May 2026*], Defendants filed at least six enforcement motions and sanctions requests, each asserting violations unrelated to any content mentioning Defendants." *Id.* ¶ 21. And, without specifying the timeframe, the Amended Complaint alleges that Defendants' conduct occurred "repeatedly over an *extended period*." *Id.* ¶¶ 39 (emphasis added). Taken together, these allegations of pre-petition activity give rise to some or all of Jives's claims. Those claims, if they had merit (which they do not), would belong to the bankruptcy estate, not Jives.

As a result, and because the bankruptcy trustee is not a party to this action, the Amended Complaint should be dismissed for lack of standing. *See In re Ragucci*, 433 B.R. 889, 898 (Bankr. M.D. Fla. 2010) (dismissing pre-petition claim brought by

debtor, rather than trustee, for lack of standing).[1]

**Overview of this Case**

In 2023, Defendants sued Jives and his company, DeMajio Media LLC, for defamation in the U.S. Distict Court for the District of Minnesota (the "First MN Case"). The parties resolved the First MN Case via a Settlement Agreement. Am. Comp. ¶ 19. Because Jives has refused to comply with the Settlement Agreement, however, Defendants have filed motions and initiated enforcement actions against him, but these steps have all been taken in a federal judicial forum (either in Minnesota or Florida). Other than those court filings, Defendants have *never* published or made any statement about Jives or encouraged or instructed anyone else to do so. Thus, contrary to his allegations, *see id.* ¶ 1, Jives has not filed this lawsuit to "redress . . . harassment"; he has filed it with the improper aim of avoiding his Settlement Agreement obligations.

The Amended Complaint complains about certain alleged activities by Defendants, but it fails to allege any tortious conduct. Instead, it is replete with "conclusory allegations, unwarranted factual deductions [and] legal conclusions masquerading as facts." *Balaban v. Prummel*, 2024 WL 2833722, at *1 (M.D. Fla. June 4, 2024) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F. 3d 1183, 1185 (11the Cir.

---

[1] Although the Amended Complaint places substantial reliance on actions occurring prior to the bankruptcy petition, Jives's Amended Schedule A/B in the Bankruptcy Proceeding (which lists all of Jives's personal property and assets as of June 3, 2026) states that Jives had "No" claims against third parties or other contingent or unliquidated claims. *See* ECF No. 8, Case No. 8:26-bk-04383-CED. Thus, Jives's Amended Complaint contradicts his bankruptcy filings.

2003)). But at its base, the Amended Complaint simply alleges that, after entering into the Settlement Agreement, Defendants have sought judicial intervention to enforce its terms. Am. Comp. ¶¶ 20, 21, 24, 26-30.

In particular, the Amended Complaint repeatedly describes Defendants' allegedly unlawful conduct as follows, with minor variations:

a. filing serial enforcement motions and sanctions requests;

b. submitting Dkt. 233 in the First MN Case and seeking judicial orders to silence Jives's speech;

c. demanding deletion of content that is not about Defendants;

d. attempting to subpoena Jives's Florida bank records and Apple account information without any proper basis;

e. submitting false or misleading filings in Plaintiff's bankruptcy case to interfere with estate administration;

f. monitoring Jives's online activities

g. seeking gag orders, forced apologies, and a confession-of-judgment from Jives for punitive reasons.

*See, e.g.*, *id.* ¶¶ 44, 51, 56, 59, 75.

These alleged actions simply are not tortious. Submitting filings with a court, including requests to enforce the Settlement Agreement or for sanctions, are legally permissible acts, not torts. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (absolute litigation privilege covers "all acts related to and occurring within judicial proceedings"). Likewise, making a demand that Jives take down online content or cease and desist from making certain statements is not prohibited. *See, e.g.*, *Silverhorse Racing, LLC v. Ford Motor Co.*, 232 F. Supp. 3d 1206, 1211 (M.D.

Fla. 2017) (sending demand letters was protected petitioning activity). And, of course, monitoring Jives's online (and public) activities also is lawful. *See, e.g.*, *Dicks v. Fipps*, 2025 WL 2494222, at *13 (M.D. Fla. Aug. 29, 2025) (plaintiff has no legitimate expectation of privacy in information shared online).

The Amended Complaint pleads no facts to raise Jives's purported right to relief beyond a wholly conclusory and speculative level. Thus, it should be dismissed.

**Motion to Dismiss Standard**

"When evaluating a motion to dismiss under Rule 12(b)(6), a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiffs." *Persaud Props. FL Invs, LLC v. Town of Fort Myers Beach, Fla.*, 593 F. Supp. 3d 1129, 1136 (M.D. Fla. 2022). "Importantly, though, this maxim does not apply to legal conclusions. Courts are 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the Complaint's factual allegations must plead a claim for relief that is plausible on its face. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, pleadings that "are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint

may not rest on "naked assertions devoid of further factual enhancement." *Grau v. Fla. Dep't. of Corrections*, 2025 WL 1078933 (M.D. Fla. Apr. 9, 2025) (quoting *Iqbal*, 556 U.S. at 678; internal quotation marks omitted).

And, of course, the Court may consider documents incorporated by reference in the pleadings. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). If the incorporated documents contradict the pleadings, the incorporated documents govern. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

## Argument

### I. Count I for Willful Violation of the Bankruptcy Stay Should be Dismissed.

Jives initiated his Chapter 7 bankruptcy proceeding in May 2026. He claims in Count I that Defendants violated the automatic stay in breach of 11 U.S.C. § 362(k). To plead a claim under Section 362(k), Jives must allege: "(1) that [Defendants] knew of the existence of the stay; (2) that [Defendants'] actions were willful; and (3) that [those] actions violated the automatic stay." *In re With Purpose, Inc.*, 182 F. 4th 457, 461 (5th Cir. 2026). But Jives has not properly pled these elements and the relevant judicial records (incorporated by reference into the Amended Complaint) show that Jives has waived this claim.

> When the Debtor appears and defends a suit on any basis other than application of the automatic stay, then the Debtor *waives the automatic stay*. To hold otherwise would allow a Debtor to have a trump card that he could play if he did not like the outcome of the action, but allowing him to take a favorable judgment.

*In re Uhrig*, 306 B.R. 687, 694 (Bankr. M.D. Fla. 2004) (quoting *In re Cobb*, 88 B.R. 119, 121 (Bankr. W.D. Tx. 1988)) (emphasis added; cleaned up). Here, Jives

primarily claims that Defendants violated the automatic bankruptcy stay by initiating a new case in Minnesota in June 2026 (the "Second MN Case"). Am. Comp. ¶ 28 (citing Case No. 0:26-cv-03013, D. Minn.). But as shown by the filings in the Second MN Case, which are incorporated by reference and which this Court can consider, Jives defended that action but *never raised the bankruptcy automatic stay* as a bar or defense. As a result, he "waived his right to complain about the alleged violations of the automatic stay in the instant case." *Uhrig*, 306 B.R. at 694. *See also In re Ottoman*, 621 B.R. 768, 787 (Bankr. E.D. Mich. 2020) (Debtors' failure to raise the automatic stay "constitute[d] a waiver . . . of the automatic stay.").[2]

Beyond waiver, Jives simply does not allege sufficient facts to state a claim for violation of Section 362(k). First, the Amended Complaint is premised upon improper group pleading, merely alleging in conclusory fashion that "Defendants" – including not only Bishop Felton and the Church, but also Defendants Darryl Moore, John Tyrone Johnson, and "John Does 1-5" – collectively undertook various actions, without any particular action being ascribed to any specific Defendant. *See, e.g.*, Am. Comp. ¶¶ 28, 43-44, 46-48 (uniformly alleging various activities by undifferentiated "Defendants"). But pleadings must "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1206 (S.D. Fla. 2021) (internal quotation omitted). If they fail to do so by, for example,

[2] The Second MN Case has been voluntarily dismissed without prejudice. *See Felton v. Jives*, No. 23-cv-03013-ECT, ECF No. 14 (D. Minn. Sept. 4, 2026).

"asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," the pleadings violate Rule 8(a)(2) and warrant dismissal. *Id.* (internal quotation omitted). Insofar as Count I is premised on the alleged actions of Defendants Moore, Johnson, and the John Does, those actions plainly are not sufficient to allege that *Bishop Felton* or the *Church* violated the stay or did so willfully. Thus, Count I should be dismissed.

Second, to the degree that Count I is based upon 11 U.S.C. § 362(a)(3), the automatic stay Jives invoked expressly applies only to property of the bankruptcy estate. "If property is not property of the estate, then the automatic stay does not protect it." *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, 254 B.R. 46, 56 (Bankr. M.D. Fla. 2000); *In re Burnsed*, 224 B.R. 496, 498 (Bankr. M.D. Fla. 1998). But here, the Amended Complaint never alleges that any particular property at issue in Count I is the property of the estate. Accordingly, any part of Count I based upon Section 362(a)(3) should be dismissed.

Third, Jives complains about Defendants' submissions *in Jives's Bankruptcy Proceedings*. Am. Comp. ¶ 2, 30, 44.b. But "the [Bankruptcy] Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay." *In re Uni-Marts, LLC*, 399 B.R. 400, 418 (Bankr. D. Del. 2009) (collecting cases; internal quotation omitted*); see also In re Erkelens*, 2015 WL 631424, at *2 (M.D. Fla. Jan. 22, 2015) ("actions that are specifically permitted under the Bankruptcy Code do not violate the automatic stay") (internal quotation omitted). Such suits are allowed because "[t]he automatic stay serves to protect the bankruptcy

estate from actions taken by creditors *outside the bankruptcy court forum*, not legal actions taken within the bankruptcy court." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008) (emphasis added; internal quotation omitted). Thus, where Count I is based upon filings in Jives's Bankruptcy Proceeding, the claim fails and must be dismissed.

Fourth, Jives's allegations of injury are merely conclusory. Jives fails to identify any out-of-pocket losses or costs directly traceable to any alleged violation of the stay or how the violation caused such injury. His claimed damages arising from "disruption of the bankruptcy administration" and "interference with the trustee's duties," Am. Comp. ¶ 47, are not injuries for which *Jives* may seek compensation.[3] Similarly, his claims of "financial harm" and "increased litigation costs," *id.*, are facially baseless. Jives has incurred no litigation costs in the Second MN Case, the only matter initiated after the bankruptcy stay issued, because he represented himself *pro se* in that matter, as shown by the judicial records from that case, which are incorporated by reference and which the Court may consider.

To the extent Jives claims "emotional distress," he never alleges, and could not plausibly allege, the level of significant emotional distress for which Section 362(k) might, theoretically, provide relief. *See Lodge v. Kondaur Cap. Corp.*, 750 F.3d

---

[3] Section 362(k) provides a remedy for an "individual" injured by a willful violation of the automatic bankruptcy stay, but "a Chapter 7 trustee is not an 'individual' for the purposes" of the statute. *In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995). Thus, no damages are recoverable for alleged disruption to the administration of *the estate* or interference with the *trustee's duties*.

1263, 1271 (11th Cir. 2014) (explaining "not every willful violation of the stay merits compensation for emotional distress" and thus plaintiff must show "significant emotional distress," "clearly establish[ed]," and caused by a violation of the stay). Here, the Amended Complaint repeatedly recites the legal conclusion that Jives suffered "emotional distress," but it is devoid of factual allegations that could support a claim for emotional damages. But merely invoking the label "emotional distress" amounts to nothing more than a "threadbare allegation that does not suffice without factual allegations in support." *Heinen v. Royal Caribbean Cruises LTD*, 806 Fed. Appx. 847, 849 (11th Cir. 2020).

Jive has waived his claim to damages for violation of the automatic stay. He also has not alleged facts supporting a claim for violation of the automatic stay. Accordingly, Count I should be dismissed with prejudice.

## II. Florida's Litigation Privilege Bars the State-Law Tort Claims Premised on Litigation-Related Conduct.

Florida's litigation privilege bars all of Jives's state-law tort claims (Counts II-VI) to the extent they are premised on conduct during and related to judicial proceedings and having some relation to the proceedings. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608–09 (Fla. 1994). The privilege applies to and bars all statutory and common law claims. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). In *LatAm Inv., LLC v. Holland & Knight, LLP*, 88 So. 3d 240 (Fla. 3d DCA 2011), for example, Florida's Third DCA affirmed dismissal with prejudice of an abuse-of-

process claim based on counsel's issuance of subpoenas and writs of garnishment in aid of executing a federal judgment. *Id.* at 240–43.

The absolute privilege is not merely a defense against liability, it grants immunity from suit and serves as grounds for dismissal if established by the pleadings. *Grippa v. Rubin*, 133 F.4th 1186, 1194–95 (11th Cir. 2025); *LatAm*, 88 So. 3d at 243. Here, the Amended Complaint repeatedly identifies the alleged wrongs as "filings," including "enforcement motions," "sanctions requests," a "Motion for Clarification," "invok[ing] state and federal judicial authority," "attempting to subpoena" Plaintiff's records, and other "litigation filings." Am. Comp. ¶¶ 2, 20, 21, 24, 25, 26, 27, 29, 30, 31. Any claims arising from such litigation-related conduct are barred by the privilege. Indeed, subjecting litigants to a subsequent civil action based on their conduct in prosecuting or defending an earlier proceeding is precisely what the litigation privilege is designed to prevent. *LatAm*, 88 So. 3d at 242–43. Accordingly, to the extent Counts II through VI rest on judicial filings and other litigation-related conduct, they must be dismissed with prejudice.

## III. Count II Fails to State a Claim for Abuse of Process.

Count II fails to state a claim for abuse of process. Such a claim requires Jives to allege that "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *Marcosquared, LLC v. Wilkes*, No: 8:25-cv-3146-CEH-LSG, 2026 WL 1900292, at *3 (M.D. Fla. Jul. 2, 2026) (internal quotation omitted). Critically,

to be actionable, misuse of process must occur ***after*** its issuance to accomplish an unlawful collateral objective. *Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983). "[T]he usual case of abuse of process involves some form of extortion." *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984).

Count II does not identify any process used *after* issuance for an illegal or improper purpose and nothing remotely like extortion. Instead, grouping all Defendants together without distinction, it identifies the alleged filing of enforcement motions and the Motion for Clarification in the First MN Case, the issuing of subpoenas for document discovery, the submitting of filings in the Bankruptcy Proceeding, and the submission of other court filings as the predicate acts of abuse of process. *See* Am. Comp. ¶ 51.[4] But the Complaint does not identify a single, concrete action taken by any Defendant that constitutes an "illegal, improper, or perverted use of process" after its issuance.[5]

Notably, the only judicial filing specifically identified in the Complaint – the Dkt. 233 filing in the First MN Case (a Motion for Clarification), *see* Am. Comp. ¶ 24. – plainly does not support an abuse of process claim. Although the Complaint alleges that Defendants filed Dkt. 233 after the Minnesota case closed, it identifies no

---

[4] To the extent that paragraph 51 of the Amended Complaint identifies actions apparently unrelated to judicial proceedings – such as "demanding deletion of content that did not mention Defendants" – they do not involve the use of process and are therefore irrelevant to Jives's abuse of process claim.

[5] For example, filings in the First MN Case simply sought enforcement of the Settlement Agreement, sanctions, civil contempt, and related judicial relief. *See Felton v. Jives*, No. 0:23-cv-00467-DTS, ECF Nos. 40, 95, 138, 147, 167 (D. Minn. Sept. 26, 2024–Nov. 19, 2025). This is the very relief those proceedings *were designed to provide*.

act by which Defendants misused Dkt. 233 *after filing it*.[6] *See Peckins*, 443 So. 2d at 1026 (requiring misuse of process "after its issuance"). As such, Count II should be dismissed with prejudice.

**IV. The Tortious Interference Claim, Count III, Should be Dismissed.**

To plead a claim for tortious interference, Jives must plead: (1) the existence of a contract or protected business interest, (2) Defendants' knowledge of the relationship, (3) Defendants' intentional and unjustified interference with the relationship, and (4) and damages caused as a result of the interference. *Castelli v. Select Auto Mgm't., Inc.*, 63 So. 3d 52, 53 (Fla. 2d DCA 2011). Considering those factors, Count III fails for several reasons.

First, Jives lacks standing to assert the claim. The Amended Complaint alleges that Jives, "via his company DeMajio Media LLC, maintains ongoing and identifiable business relationships." Am. Comp. ¶ 54. Thus, it alleges (or at least attempts to allege) a protectable business relationship between a company (DeMajio Media LLC) and unnamed "viewers, subscribers, advertisers, sponsors, and online platforms." *Id.* Because the alleged business relationships belong to DeMajio Media, and not to Jives individually, Jives lacks standing to sue for tortious interference and the claim warrants dismissal with prejudice. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*,

[6] On its face, Dkt. 233, which was titled "Plaintiff's Motion for Clarification Regarding Dkt. 232 and the Court's Continuing Enforcement Authority," was simply seeking clarification that the MN Court's June 10 order did not moot the Court's prior enforcement orders and that Jives still had to comply with the Court's orders and the Settlement Agreement. Seeking such clarification cannot be tortious conduct.

361 F.3d 1321, 1324-25 (11th Cir. 2004); *Becker Designs, Inc. v. Biker Design, Inc.*, 2006 WL 2444075, at *3-*4 (M.D. Fla. Aug. 22, 2006).

Second, "Florida law requires a plaintiff to identify the specific business relationship the defendant allegedly interfered with." *AccessNinja, Inc. v. PassNinja, Inc.*, No. 24-cv-24745-ALTMAN/Lett, 2025 WL 2171606, at *12 (S.D. Fla. Jul. 31, 2025); *see also Shopping Ctr. Int., LLC v. Tab 250, Ltd.*, 433 So. 3d 406, 417 (Fla. 4th DCA 2026) ("a tortious interference claim is legally insufficient and subject to dismissal for failure to state a claim if it does not specify any parties with whom the plaintiff had and understanding or agreement") (internal quotation omitted). Count III refers vaguely to "viewers, subscribers, advertisers, sponsors, and online platforms," Am. Comp. ¶ 54, but such generic descriptions are insufficient as a matter of law. *Shopping Ctr.*, 433 So. 3d at 417 (A "bare statement of the legal elements *without naming any specific party* . . . does not adequately plead a tortious interference claim.") (emphasis added). Relatedly, because the Amended Complaint fails to identify any protectable contract or business relationships, it cannot plausibly plead that Defendants had knowledge of such purported relationships. Similarly, its conclusory assertion that Jives through his company suffered a "loss of audience engagement, platform instability, and damage to advertiser and subscriber relationships," *see* Am. Comp. ¶ 58, is insufficient to plead that Defendants caused any actionable harm, because "either 'breach' or 'termination' of a business relationship or expectancy is necessary to establish interference." *Anthony Distribs., Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1572 (M.D. Fla. 1996). Jives has not

alleged breach or termination. Because he cannot allege any of the key elements of tortious interference, Count III should be dismissed with prejudice.

## V. Count IV Does Not Plead Extreme and Outrageous Conduct.

In Count IV, Jives attempts to plead a claim for intentional infliction of emotional distress (IIED), but such a claim requires pleading intentional or reckless conduct that is so extreme and outrageous as to exceed all possible bounds of decency, causing severe emotional distress. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). The threshold is a demanding one: conduct does not become actionable merely because it was intentional, malicious, tortious, or aggravating. And "[w]hether conduct is outrageous enough to support a claim for intentional infliction of emotional distress is a question of law" to be decided by the court. *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (internal quotation omitted).

The conduct vaguely referenced in the Amended Complaint comes nowhere near meeting this high bar. At most, Count IV repackages the same litigation conduct and otherwise permissible activity alleged in Count II: motions, sanctions requests, the Dkt. 233 filing, demands to delete content, purported subpoena efforts, and the monitoring of publicly available online activity. Am. Comp. ¶¶ 59. Plainly, to the extent this alleged conduct occurred in connection with judicial proceedings, it is privileged and cannot support an IIED claim, as explained above. *See, e.g.*, *Levin*, 639 So. 2d at 608.

But even if any of the alleged conduct was not related to judicial proceedings,

it still cannot support an IIED claim. No Florida case has ever held that asking a plaintiff to take down an online publication or monitoring a plaintiff's publicly available online activity constitutes IIED. Such conduct is not even tortious, let alone beyond all bounds of decency in a civilized society. Relatedly, the Amended Complaint does not plausibly plead that Jives has suffered severe emotional distress "of such a substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018). In *Rincon v. Miami-Dade Cnty.*, No. 16-CV-22254-GAYLES/MCALILEY, 2020 WL 7344633 (S.D. Fla. Mar. 31, 2020), for example, the plaintiffs alleged that, because of a shooting, they experienced "severe physical, mental and emotional injuries, and loss of enjoyment of life," but even those allegations were "not enough" to plead the severe emotional distress necessary to support an IIED claim. *Id.* at *11 (dismissing IIED claim). The Amended Complaint likewise fails to plead a viable IIED claim. Because the conduct supporting Count IV cannot, as a matter of law, satisfy the heavy burden for pleading IIED, it should be dismissed with prejudice.

## VI. Count V, for Defamation, Fails to Identify Any Actionable, Nonprivileged Statements.

Count V fails to state a claim for defamation because the Complaint neither identifies an actionable false statement of fact nor distinguishes privileged litigation communications from any allegedly nonprivileged publication. A defamation claim requires publication of a false and defamatory statement of fact about the plaintiff,

the requisite degree of fault, and actual damages, among other things. *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018). A false statement of fact is indispensable; true or substantially statements, along with statements not readily capable of being proven false, are not actionable. *Id.*

"Whether the defendant's statements constitute defamation ... is a question of law for the court to determine." *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023) (internal quotation omitted). Thus, the pleadings must identify the allegedly defamatory statements with enough specificity that the Court can review and analyze them and the context in which they were made.

"In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rogdriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (dismissing defamation claim). *Grayson v. No Labels, Inc.*, No. 6:20-cv-1824-Orl-40LRH, 2021 WL 2869870, at *4 (M.D. Fla. Jan. 26, 2021) (dismissing defamation claim because allegations of defamatory publication were ambiguous); *Jetaire Aerospace, LLC v. AerSale Inc.*, No. 1:20-cv-25144-DPG, 2023 WL 9228307, at *5 (S.D. Fla. Nov. 28, 2023) (dismissing defamation counterclaim because pleadings "fail[ed] to identify the specific statements claimed to be defamatory"); *Malhotra v. Aggarwal*, No. 1:17-cv-24407-GAYLES/OTAZO-REYES, 2019 WL 3425161, at *2 (S.D. Fla. Jul. 30, 2019) (dismissing defamation claim because complaint "failed to provide an adequate description of the statements and time frame").

Here, the Amended Complaint wholly fails to provide the necessary

information about the allegedly defamatory statements. To the extent that it alleges that Defendants "publicly accus[ed] Plaintiff of ongoing 'defamation,'" Am. Comp. ¶ 64.a, the only accusation of defamation identified in the Amended Complaint is when Defendants sued Jives for defamation in the First MN Case and sought judicial enforcement of the Settlement Agreement. *Id.* ¶¶ 2, 18, 20. Those actions are privileged and cannot support a defamation claim. *See, e.g.*, *Levin*, 639 So. 2d at 608. Similarly, the allegation that Defendants said Jives violated the Settlement Agreement, Am. Comp. ¶ 64.b, is part of a judicial filing, which is privileged.

The allegation that Defendants made statements "implying Plaintiff engaged in unlawful, unethical, or improper conduct as a journalist," *id.* ¶ 64.c, is improperly generic and conclusory, because it does not identify which Defendant made the statement, when or where the statement was made, whether the statement was written or oral, the recipient or audience, or the factual basis for falsity. Thus, Jives's allegation is wholly inadequate to state a defamation claim. *Five for Ent.*, 877 F. Supp. 2d at 1328; *Jetaire*, 2023 WL 9228307, at *5. Moreover, inasmuch as Jives claims that Defendants *impliedly* defamed him, such a claim would require Jives to identify *true statements* by Defendants juxtaposed in a manner that *implies a false and defamatory fact*. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021) ("The Complaint pleads only that [defendant's] accusations were false – not that they were true and gave a false implication – which requires dismissal."). The Amended Complaint does not make these allegations.

Additionally, the allegation that "Defendants have accused the Plaintiff of

disingenuous, dishonest, and spitefully biased reporting on organized religion," Am. Comp. ¶ 64.d, suffers from the same deficiencies because it does not identify which Defendant made the statement, when or where it was made, whether it was written or oral, the recipient or audience, or the factual basis for falsity. In fact, the Amended Complaint identifies with clarity only *one audience* to whom Defendants have ever addressed any statements about Jives – federal courts in Florida and Minnesota. Such privileged statements cannot support a defamation claim and, therefore, Jives's claim fails.

**VI. Count VI's Conspiracy Claim Should be Dismissed.**

Under Florida law, "the gist of a civil action for conspiracy is not conspiracy itself but the civil wrong which is done pursuant to the conspiracy, and which results in damage to the plaintiff." *Balcor Prop. Mgmt., Inc. v. Ahronovitz*, 634 So. 2d 277, 279 (Fla. 4th DCA 1994). Thus, if the underlying tort claim fails, the conspiracy claim fails. *Gacek v. Avalon Dunes Condo. Owners Ass'n., Inc.*, 431 So. 3d 299, 303 (Fla. 1st DCA 2026). Here, as demonstrated throughout this Motion, each of the Amended Complaint's tort counts fails to state a claim for relief and must be dismissed. Accordingly, the conspiracy claim also fails and must be dismissed.

Moreover, a conspiracy claim "requires the combination of two or more persons – a meeting of two independent minds intent on one purpose." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). To survive a motion to dismiss, a plaintiff "must allege particularized facts that are more than vague or conclusory." *Debose v. Univ. S. Fla.*, 178 F. Supp. 3d 1258, 1272 (M.D. Fla.

2016) (internal quotation omitted). Alleging that Defendants "agreed" to conspire or took actions "in furtherance" of a conspiracy are not sufficient because they merely "restate[] the language of a Florida conspiracy claim." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347 (11th Cir. 2025).

The Amended Complaint fails plausibly to allege any facts showing Defendants agreed to commit an unlawful act or a lawful act by unlawful means. It alleges concerted action "upon information and belief," Am. Comp. ¶ 33, and provides a formulaic recitation of the elements of conspiracy by pleading that Defendants entered into an "agreement, combination, or understanding." *Id.* ¶ 72. But it alleges no non-conclusory facts showing when, where, or how any agreement was formed. Such formulaic allegations do not plausibly plead a conspiratorial agreement. *ECB USA*, 148 F.4th at 1347; *see also Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1346 (S.D. Fla. 2018) (dismissing conspiracy claims where allegations of conspiracy were not supported by "sufficient facts demonstrating that any of the Defendants agreed to . . . do any . . . unlawful act").

Because the Complaint does not allege any viable underlying tort and merely alleges the possible existence of a conspiracy in vague and conclusory terms, the Court should dismiss Count VI with prejudice.

## Conclusion

WHEREFORE, Defendants respectfully request that the Court grant this Motion, dismiss the Complaint with prejudice, and grant such further and other relief as the Court deems necessary.

Respectfully submitted,

THOMAS & LOCICERO PL

*/s/ James J. McGuire*
James J. McGuire
Florida Bar No. 0187798
601 South Boulevard
Tampa, FL 33606
Tel: (813) 984-3062
Email:
jmcguire@tlolawfirm.com
smaxey@tlolawfirm.com

-and-

Melissa G. McDavitt
Florida Bar No. 0041576
915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Email: mmcdavitt@tlolawfirm.com
bbrennan@tlolawfirm.com

*Counsel for Defendants Bishop Wayne R. Felton and The Holy Christian Church International*

**GOOD FAITH CERTIFICATE**

I HEREBY CERTIFY, pursuant to Local Rule 3.01(g), that on October 19, 2026, undersigned counsel conferred via email with Plaintiff's counsel, Robert S. Mactavish, in a good-faith effort to resolve the issues raised in this motion. Despite that good-faith effort, the parties have been unable to reach an agreement on the resolution of this motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 22, 2026, I electronically filed a true and correct copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notice of the filing to the email address of all counsel of record.

By: */s/ James J. McGuire*
Attorney