UNITED STATES DISTRICT COURT
for the
Middle District of Florida – Tampa Division

| | | |
|---|---|---|
| DE'MARIO JIVES<br>*Plaintiff,*<br><br>-v-<br><br>BISHOP WAYNE R. FELTON, THE HOLY CHRISTIAN CHURCH INTERNATIONAL, DARRYL MOORE, JOHN TYRONE JOHNSON and JOHN DOES 1–5,<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 8:26-cv-2193-JLB-AEP |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff De'Mario Jives ("Plaintiff"), by and through undersigned counsel, respectfully submits this Response in Opposition to Defendants Bishop Wayne R. Felton and The Holy Christian Church International's Motion to Dismiss Amended Complaint (Doc. 21).

## INTRODUCTION

Defendants' Motion to Dismiss (Doc. 21) seeks to dispose of this action by treating Plaintiff's claims as nothing more than pre-petition disputes arising from prior litigation in Minnesota. That characterization ignores the First Amended Complaint's allegations of continued conduct after Plaintiff filed for Chapter 7 bankruptcy on May 21, 2026, including the commencement

of a second Minnesota action, efforts to obtain his personal and financial records, continued enforcement activity, and conduct directed at interfering with his business, reputation, and protected expression. Defendants' reliance on the general rule that pre-petition causes of action may become property of the bankruptcy estate does not establish that every claim asserted here belongs to the estate or that Plaintiff lacks standing to pursue claims arising from independent post-petition conduct.

Defendants likewise attempt to shield the alleged conduct through an expansive application of the litigation privilege. But the First Amended Complaint does not rest solely on statements made in judicial proceedings. It alleges the misuse of judicial process to obtain collateral concessions, threats of physical harm and interference with Plaintiff's housing, communications to third parties targeting his professional relationships, and coordinated efforts to intimidate Plaintiff and interfere with his reporting and business activities. The fact that some alleged conduct occurred in connection with prior litigation does not immunize separate acts of intimidation, interference, or misuse of process.

At this stage, the Court must evaluate the well-pleaded allegations under the governing standards, not accept Defendants' competing characterization of the events. The First Amended Complaint identifies the conduct underlying each of its six counts, alleges the participants' involvement

in the challenged course of conduct, and describes the resulting injuries. Defendants' arguments concerning bankruptcy standing, the automatic stay, litigation privilege, and the sufficiency of Plaintiff's claims do not justify dismissal of the action.

Accordingly, for the reasons set forth below, the Court should deny the Motion.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach*, 593 F. Supp. 3d 1129, 1136 (M.D. Fla. 2022). Legal conclusions, however, are not entitled to that presumption. *Iqbal*, 556 U.S. at 678–79.

A challenge under Rule 12(b)(1) may be facial or factual. In a facial challenge, the Court applies a standard similar to Rule 12(b)(6), accepting the complaint's jurisdictional allegations as true. In a factual challenge, the Court may consider evidence outside the pleadings and need not presume those allegations are true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Defendants' bankruptcy argument also requires distinguishing Article III standing from whether the bankruptcy trustee is the real party in interest under Rule 17(a). Under 11 U.S.C. § 541(a)(1), the bankruptcy estate generally includes the debtor's legal and equitable interests in property as of the commencement of the bankruptcy case. Accordingly, causes of action accruing before the petition date may become estate property. *Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1272 (11th Cir. 2004). Claims arising from independent post-petition conduct, however, are not automatically property of the estate. Further, Rule 17(a)(3) prohibits dismissal for failure to prosecute in the name of the real party in interest until a reasonable opportunity has been afforded for ratification, joinder, or substitution.

## ARGUMENT

### A. Defendants' Bankruptcy-Standing Argument Does Not Warrant Dismissal, and Count I Adequately Alleges Violations of the Automatic Stay.

Defendants argue that Plaintiff lacks standing because his claims became property of the bankruptcy estate when he filed his Chapter 7 petition on May 21, 2026. That argument improperly treats the entire course of alleged conduct as a single prepetition claim. Although causes of action that accrued before bankruptcy generally become property of the estate under 11 U.S.C. § 541(a)(1), the relevant inquiry is when each cause of action accrued and

whether its essential elements existed when the petition was filed. *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272–73 (11th Cir. 2004); *In re Witko*, 374 F.3d 1040, 1042–44 (11th Cir. 2004). Under *Witko*, a cause of action that does not accrue until an essential element arises after the petition is not transformed into estate property merely because some of the underlying events occurred before bankruptcy.

The FAC alleges substantial post-petition conduct, including Defendants' commencement of a second Minnesota action on June 18, 2026, continued efforts to enforce obligations arising from the parties' prior dispute, and efforts to obtain Plaintiff's financial and personal information. FAC ¶¶ 28–30. It further alleges that this conduct injured Plaintiff's personal, professional, and business interests. Id. ¶¶ 31–40. Those allegations concern conduct occurring after the bankruptcy petition and injuries allegedly resulting from that conduct. Defendants cannot establish that every claim in the FAC accrued before bankruptcy simply by pointing to the parties' earlier dispute. The Court must assess the claims according to the conduct and injuries alleged, rather than treating all subsequent events as part of one prepetition controversy.

Defendants' reliance on Plaintiff's bankruptcy schedules does not resolve the issue. Although a debtor's failure to disclose prepetition claims does not extinguish the trustee's rights, *Parker*, 365 F.3d at 1272–73, the

schedules do not establish that claims arising from independent post-petition conduct accrued before the petition. Nondisclosure therefore does not establish that Plaintiff lacks standing to pursue those claims.

Count I separately alleges willful violations of the automatic stay. Section 362(a) prohibits, among other things, commencing or continuing a judicial proceeding against a debtor to recover a claim that arose before bankruptcy, enforcing a prepetition judgment against the debtor or estate property, taking affirmative action to obtain possession of or exercise control over estate property, and undertaking acts to collect or recover a prepetition debt. 11 U.S.C. § 362(a)(1)–(3), (6). The FAC alleges that Defendants knew of Plaintiff's bankruptcy and nevertheless engaged in post-petition conduct directed at pursuing prepetition obligations and obtaining Plaintiff's financial information. FAC ¶¶ 41–46.

Most significantly, Plaintiff alleges that Defendants commenced the Second Minnesota Case on June 18, 2026 - after the bankruptcy petition was filed - in connection with obligations arising from the parties' pre-petition dispute. Id. ¶ 28. Section 362(a)(1) expressly stays the commencement of a judicial proceeding against a debtor to recover a claim that arose before bankruptcy. Statutory prohibition is not avoided by commencing a separate action rather than continuing the original litigation. The relevant question is whether the new proceeding was brought against Plaintiff to pursue a

prepetition claim. The FAC alleges that it was.

The FAC also alleges post-petition efforts to obtain Plaintiff's bank-account and personal information and to pursue the alleged prepetition obligations. Id. ¶¶ 29–30, 44. Those allegations further support the claim under § 362(a)(6), which prohibits acts to collect, assess, or recover a prepetition claim against the debtor. And insofar as the challenged efforts sought to obtain or exercise control over property of the bankruptcy estate, they implicate § 362(a)(3). The precise application of subsection (a)(3) depends on the property targeted and the nature of the acts taken; it does not undermine the independently pleaded violations under subsections (a)(1) and (a)(6). The FAC alleges affirmative post-petition efforts to pursue claims against Plaintiff outside the bankruptcy process, not merely the passive retention of property or the existence of an unresolved dispute.

Defendants' reliance on *In re Uhrig*, 306 B.R. 687, 694–95 (Bankr. M.D. Fla. 2004), likewise does not establish a blanket waiver of the automatic stay. *Uhrig* addressed waiver based on the debtor's extensive and knowing participation in the underlying litigation. It does not establish that participation in one proceeding waives protection against separate post-petition collection activity or independently commenced litigation. Here, Plaintiff alleges distinct post-petition conduct, including commencing a second action and seeking financial information and pursuing pre-petition

obligations. FAC ¶¶ 28–30, 44.

The FAC also adequately alleges willful violations. A violation of the automatic stay is willful when the defendant knows the stay is in effect and intentionally commits the act that violates it; specific intent to violate the stay is not required. *In re Jove Engineering, Inc.,* 92 F.3d 1539, 1555 (11th Cir. 1996). The FAC alleges that Defendants knew of Plaintiff's bankruptcy and nevertheless intentionally engaged in the post-petition conduct described above. FAC ¶¶ 43–46. That is sufficient at the pleading stage to allege willfulness.

The FAC alleges financial loss, emotional distress, and litigation-related expenses. Id. ¶¶ 47–48. Section 362(k) authorizes actual damages, including costs and attorney's fees, for willful violations of the stay. Although emotional-distress damages require proof of significant distress and a causal connection to the violation, *Lodge v. Kondaur Capital Corp.,* 750 F.3d 1263, 1271–72 (11th Cir. 2014), the FAC also alleges financial injury and litigation-related expenses. Those allegations are sufficient to prevent dismissal based solely on Defendants' challenge to the nature of Plaintiff's damages.

Hence, Defendants have not established that all claims asserted in the FAC belong to the bankruptcy estate, and Count I alleges post-petition conduct that falls within the prohibitions of § 362(a)(1) and (a)(6), as well as § 362(a)(3) insofar as estate property was targeted. The allegations of

knowledge, intentional conduct, and resulting injury adequately state a claim under § 362(k). Defendants' standing, waiver, statutory-scope, and damages arguments do not warrant dismissal.

**B. Count II Adequately States a Claim for Abuse of Process.**

Defendants argue that Count II alleges, at most, an improper motive for pursuing litigation. That argument disregards the distinction between maliciously instituting litigation and subsequently misusing legal process for an ulterior purpose. Under Florida law, abuse of process requires (1) improper use of process after it has been issued, (2) for a purpose other than that for which the process was designed, and (3) resulting injury. *Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983); *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984). The FAC alleges precisely that kind of misuse.

Count II does not rest merely on the allegation that Defendants pursued litigation because they disapproved of Plaintiff's reporting. It identifies enforcement proceedings, sanctions requests, subpoena-related process, and other judicial mechanisms allegedly used to compel Plaintiff to delete content, restrict future reporting, issue apologies, and accept other concessions unrelated to the legitimate purposes of the underlying proceedings. FAC ¶¶ 49–51. Plaintiff alleges that Defendants later used properly issued processes as leverage to obtain those collateral concessions. Id. ¶ 50. Whether Defendants ultimately obtained the relief they allegedly sought does not

resolve whether they misused process in attempting to obtain it.

Defendants' reliance on Felton's June 18, 2026, motion for clarification, Dkt. 233, does not dispose of Count II. The FAC identifies that filing as part of the broader course of enforcement activity following the Minnesota court's June 10, 2026, order, which stated that the court would not entertain claims concerning content posted after December 11, 2024. FAC ¶¶ 27–28, 49–51. Plaintiff does not contend that filing a motion for clarification, standing alone, automatically constitutes abuse of process. Rather, the filing is alleged as part of the continuing effort to use judicial proceedings and enforcement mechanisms to pursue restrictions and concessions beyond the legitimate function of the underlying process. Defendants' characterization of Dkt. 233 as a routine request for clarification does not answer the broader allegations concerning the use of process to compel collateral relief.

Nor does the litigation privilege warrant dismissal of this count. Plaintiff is not relying exclusively on allegedly defamatory statements in pleadings or courtroom advocacy. Count II alleges the misuse of judicial mechanisms themselves, including enforcement and subpoena-related process, as instruments to obtain collateral concessions and interfere with Plaintiff's conduct outside the litigation. The fact that process arose in a judicial proceeding does not, itself, answer whether its subsequent use constituted abuse of process. Defendants' privilege argument cannot substitute for an

examination of the conduct alleged and the purpose for which the process was allegedly employed.

Taken as true, these allegations identify the challenged processes, their alleged collateral use, and resulting injury, and therefore state a claim for abuse of process under Florida law. FAC ¶¶ 49–53.

**C. Count III Adequately States a Claim for Tortious Interference with Business Relationships.**

Defendants argue that Count III fails because Plaintiff identifies only generalized relationships with viewers, subscribers, advertisers, and social-media platforms, and because certain business relationships allegedly belong to DeMajio Media LLC. That argument overlooks the FAC's allegation that Moore directly contacted St. Pete Pride, where Plaintiff serves on the Board, communicated false and damaging information about Plaintiff, and thereby caused a decline in Plaintiff's clientele and business relationships involving existing and prospective clients associated with that organization. FAC ¶ 56(f). The allegation identifies a particular organization, a direct communication, and the client relationships allegedly affected.

Under Florida law, a claim for tortious interference requires (1) the existence of a business relationship; (2) the defendant's knowledge of that relationship; (3) intentional and unjustified interference with the relationship; and (4) resulting damage. *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.

2d 812, 814 (Fla. 1994); *Ferguson Transp., Inc. v. North American Van Lines, Inc.,* 687 So. 2d 821, 823–24 (Fla. 1996). The relationship need not be embodied in an enforceable contract, but it must afford existing or prospective legal or contractual rights. *Ethan Allen*, 647 So. 2d at 814. Florida law recognizes claims involving existing and prospective customers; it does not permit recovery based merely on interference with a business's relationship to the community at large. Id. at 815.

The FAC alleges more than a generalized relationship with the public. Paragraph 56(f) identifies St. Pete Pride as the organization Moore contacted and alleges that the communication targeted Plaintiff's professional and client relationships associated with it. The FAC further alleges that Defendants knew of those relationships and acted to disrupt them. FAC ¶¶ 54–57. Defendants' reliance on *Castelli v. Select Auto Management, Inc.,* 63 So. 3d 52, 54–55 (Fla. 2d DCA 2011), does not compel dismissal. *Castelli* involved evidence presented after trial that failed to connect the defendant's conduct to a particular customer relationship. Here, Plaintiff alleges a direct communication to an identified organization, Defendants' knowledge of his professional relationships, and resulting interference. Plaintiff need not prove the identities of every affected customer before discovery.

Also, Defendants' reliance on *AccessNinja, Inc. v. PassNinja, Inc.*, No. 24-CV-24745, 2025 WL 2171606, at *4 (S.D. Fla. July 31, 2025), *Shopping*

*Center International, LLC v. Tab* 250, Ltd., 433 So. 3d 406, 417 (Fla. 4th DCA 2026), and *Anthony Distributors, Inc. v. Miller Brewing Co.,* 941 F. Supp. 1567 (M.D. Fla. 1996), is likewise misplaced. Those authorities do not eliminate the distinction between generalized market or community harm and targeted interference with identifiable business relationships. The FAC alleges the latter.

Defendants' argument concerning DeMajio Media LLC also mischaracterizes the claim. Plaintiff does not premise Count III solely on a loss of revenue or injury belonging to the company. He alleges interference with his own professional and business relationships and resulting injury to his own clientele and professional interests. FAC ¶¶ 54, 56–58. The fact that Plaintiff conducts some of his activities through DeMajio Media LLC does not establish that every relationship he maintains, or every injury resulting from interference with those relationships, belongs exclusively to the entity. The relevant question is whether Plaintiff alleges interference with relationships in which he personally had a protectable interest and resulting injury to himself. The FAC alleges that he did.

Hence, Count III alleges identifiable professional and client relationships, Defendants' knowledge of those relationships, targeted interference, and resulting injury to Plaintiff. The FAC does not seek to impose liability merely because Defendants criticized Plaintiff or affected his standing

with the public. It alleges that they deliberately contacted a particular organization to damage business relationships connected to Plaintiff's professional activities. Those allegations are sufficient to withstand dismissal.

**D. Count IV Adequately States a Claim for Intentional Infliction of Emotional Distress.**

Defendants argue that the conduct alleged in Count IV does not satisfy Florida's demanding standard for extreme and outrageous conduct. That argument improperly isolates individual incidents and disregards the cumulative course of intimidation alleged in the FAC, including threats directed at Plaintiff's physical safety, family, and housing.

Under Florida law, intentional infliction of emotional distress requires intentional or reckless conduct that is extreme and outrageous and causes severe emotional distress. *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). Conduct is actionable when it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. Id. Although the standard is demanding, it requires consideration of the nature of the conduct and the circumstances in which it occurred, not an artificially narrow examination of each alleged act in isolation.

The FAC alleges that Moore threatened to make Plaintiff bleed, go after Plaintiff's mother, and continue the harassment. FAC ¶ 59(h). It further alleges that Moore and Johnson threatened to contact Plaintiff's landlord and

communicate information about him, including false information, for the purpose of causing his eviction. Id. ¶ 59(i). These are not merely insults or expressions of hostility. They are alleged threats directed at Plaintiff's physical safety, a member of his family, and his ability to maintain his home. The FAC further alleges that this conduct was intentional, malicious, and repeated, and caused anxiety, fear, humiliation, mental anguish, and disruption to Plaintiff's daily life and professional functioning. Id. ¶¶ 60–62.

These allegations must be considered in the context of the broader conduct described in the FAC, including efforts to monitor Plaintiff, interfere with his professional activities, and intimidate him through litigation-related and extrajudicial means. FAC ¶¶ 31–40, 51–52, 59–62. Considered together, the alleged threats to cause physical harm, target Plaintiff's mother, and jeopardize his housing plausibly present more than isolated insults or ordinary interpersonal disputes.

Defendants' reliance on *McCarson, Malverty, Kim*, and *Rincon* does not require dismissal. Those authorities recognize that the tort is reserved for genuinely extreme and outrageous conduct; they do not establish that threats directed at a person's physical safety, family, and housing are categorically insufficient. Whether the alleged conduct ultimately meets that demanding standard should be evaluated in light of the full circumstances pleaded, with reasonable inferences drawn in Plaintiff's favor.

Nor does the litigation privilege dispose of Count IV. Florida recognizes an absolute privilege for conduct occurring during a judicial proceeding, provided the conduct bears some relation to that proceeding. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Insurance Co.*, 639 So. 2d 606, 608 (Fla. 1994); Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007). But the privilege does not automatically extend to every extrajudicial act merely because the parties are involved in litigation. In *Grippa v. Rubin*, the Eleventh Circuit explained that Florida's absolute privilege protects conduct within the judicial process, while declining to extend that immunity to additional statements communicated outside the proceeding to third parties. 133 F.4th 1186, 1193–97 (11th Cir. 2025). Here, the threats concerning physical harm, Plaintiff's mother, and contact with his landlord are not allegations confined to pleadings, motions, or courtroom advocacy. They concern alleged intimidation directed at Plaintiff and third parties outside the ordinary presentation of a claim or defense. The litigation privilege therefore does not furnish a basis to dismiss the entire count.

Although the FAC identifies Moore and Johnson as the speakers of particular threats, it alleges that those threats were part of the broader coordinated conduct described throughout the pleading. FAC ¶¶ 12, 31–40, 59–62. The FAC also alleges responsibility for conduct undertaken, authorized, or

ratified in furtherance of that course of conduct. Whether the evidence ultimately establishes the moving Defendants' responsibility is not resolved by disregarding those allegations at the pleading stage.

**E. Count V Adequately States a Claim for Defamation.**

Defendants argue that Count V fails because Plaintiff does not identify sufficiently specific defamatory statements or establish that the statements were published outside the Minnesota litigation. That argument overlooks the FAC's allegations that Defendants communicated accusations of dishonesty, misconduct, unethical journalism, and purported violations of the parties' settlement agreement to church members, associates, online audiences, and individuals involved in preparing enforcement materials. FAC ¶¶ 64–69. Plaintiff alleges that these were false factual accusations intended to portray him as dishonest and engaged in professional wrongdoing, not merely criticism of his opinions or reporting.

Under Florida law, a defamation claim requires a false statement of fact, publication to a third party, fault amounting to at least negligence, and resulting damages. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). A statement is not protected simply because a defendant characterizes it as opinion; the question is whether, in context, it conveys a provably false factual assertion. Accusations that Plaintiff engaged in dishonest or unethical professional conduct or violated a settlement agreement can convey factual

assertions that can be proven true or false. The FAC identifies the substance of those accusations, the third-party audiences to whom they were allegedly communicated, and the resulting reputational and professional injury. FAC ¶¶ 64–69.

Defendants' reliance on the litigation privilege likewise does not justify dismissal of the entire count. The FAC alleges publication to audiences outside the judicial proceedings, including church members, associates, and online audiences. Id. ¶ 66. In *Grippa v. Rubin*, 133 F.4th 1186, 1193–1203 (11th Cir. 2025), the Eleventh Circuit distinguished statements made within judicial proceedings from extrajudicial communications, explaining that the latter are not automatically protected by the absolute litigation privilege. The FAC alleges that Defendants disseminated false accusations to third parties with actual malice and for the purpose of damaging Plaintiff's reputation and professional standing. FAC ¶¶ 65–69. Defendants therefore cannot establish that every publication alleged in Count V is absolutely privileged merely because some communications may have concerned the Minnesota litigation.

Count V alleges false factual accusations concerning Plaintiff's honesty and professional conduct, publication to third parties, actual malice, and resulting reputational and professional injury. Defendants' characterization of the statements as protected opinion or privileged litigation communications does not warrant dismissal.

**F. Count VI Adequately States a Claim for Civil Conspiracy.**

Defendants argue that Count VI fails because Plaintiff does not allege facts establishing an agreement among Defendants or an actionable underlying tort. That argument disregards the circumstantial allegations of coordinated conduct throughout the FAC. A civil conspiracy requires an agreement between two or more parties to accomplish an unlawful objective or a lawful objective by unlawful means, an overt act in furtherance of the conspiracy, and resulting damages. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

The FAC alleges that Defendants acted in concert to monitor Plaintiff's reporting, interfere with his professional and business relationships, and intimidate him through litigation-related and extrajudicial conduct. FAC ¶¶ 33–35, 71–75. Those allegations are supported by specific acts attributed to individual participants, including Felton's enforcement efforts, Moore's alleged communication with St. Pete Pride, and the threats attributed to Moore and Johnson. Id. ¶¶ 28–30, 56(f), 59(h)–(i). An agreement may be inferred from circumstantial facts, and Plaintiff is not required to plead the details of private communications among alleged co-conspirators before discovery. Taken together, the FAC identifies the alleged common objective, the participants' conduct, and the acts allegedly undertaken to further that objective.

The FAC also alleges actionable underlying torts, including abuse of

process, tortious interference, intentional infliction of emotional distress, and defamation. Id. ¶¶ 49–70. Defendants' assertion that the conspiracy claim necessarily fails because no underlying tort is adequately pleaded depends on their separate arguments for dismissing those claims. For the reasons set forth above, those arguments do not warrant dismissal. The alleged conspiracy therefore cannot be dismissed simply by assuming that the underlying tort claims fail.

Therefore, the FAC alleges a common objective, coordinated conduct from which an agreement may reasonably be inferred, overt acts in furtherance of the alleged conspiracy, and resulting damages. Count VI adequately states a claim for civil conspiracy, and dismissal is unwarranted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss (Doc. 21) in its entirety and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: November 5, 2026

**LLG NATIONAL LAW GROUP**



______________________________

Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue

Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.



Robert S. Mactavish